PACHUCKI, Plaintiff-Appellant, v. REPUBLIC INSURANCE COMPANY, and others, Defendants-Respondents.

Supreme Court

*No. 76–592. Submitted on briefs May 2, 1979.—*
*Decided May 30, 1979.*
(Also reported in 278 N.W.2d 898.)

For the appellant the cause was submitted on the brief of *Marjan R. Kmiec* and *Richard A. Sachs, Jr.,* both of Milwaukee.

For the respondents the cause was submitted on the brief of *Burton A. Strnad* and *Howard H. Koppa* of Milwaukee.

COFFEY, J. This is an appeal taken from interlocutory judgments entered in favor of the defendant-respondents Underwriters Insurance Company (hereinafter Underwriters) and Republic Insurance Co. (hereinafter Republic.) [1] Judgment was granted dismissing the plaintiff-appellant, Gary Pachucki's complaint and the cross-complaints against Underwriters and Republic after a bifurcated trial to the court on the issue of insurance coverage.

The plaintiff-appellant, Gary Pachucki, commenced this action seeking to recover damages for personal in-

---

[1] The judgment in favor of Underwriters was entered on February 11, 1977. Republic's judgment was entered on May 11, 1979 after a hearing before the Supreme Court wherein the court granted leave to the defendant-respondent to record and file said judgment.

juries suffered during an incident at work on September 10, 1972 when he was struck in the right eye. On the date of the accident, the plaintiff was employed as a printer at Steins Garden Center of Milwaukee. At approximately 5:30 p.m., co-employees and the defendants in this action, Dale Boeschke, Bernard Halas and Anthony Anderson,[2] entered the room where Pachucki was working and started a "greening pin war." A greening pin war is described as being comparable to the shooting of paper clips with rubber bands. The flying metal object that caused an injury to the cornea of the plaintiff's right eye was a greening pin, similar in size and weight to a bobby pin.

The plaintiff's complaint also named as defendants in this action Republic and Underwriters insurance companies. At the time of the accident, Republic had in full force and effect policies of homeowners insurance covering the parents of Dale Boeschke and Anthony Anderson, with their children named as additional insureds. Similarly, Underwriters had issued a homeowners policy to the parents of Bernard Halas, naming him as an additional insured. The original answers filed by the insurance companies were subsequently amended to allege certain defenses in coverage relying upon the "business pursuit" and the "intentional tort" policy exclusions. Each policy contained the following language in the coverage exclusionary provisions:

"THIS POLICY DOES NOT APPLY:

"1. Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others: . . .

"(d) to bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits; . . .

"(f) to bodily injury or property damage which is either expected or intended from the standpoint of the insured."

---

[2] The individual defendants are not parties to this appeal.

Republic and Underwriters moved for summary judgments of dismissal upon the above recited policy exclusions. In the alternative, the insurers requested a bifurcated trial with respect to the issue of policy coverage in the event that the motions for summary judgment were denied. The trial court denied the respective summary judgment motions but granted Republic's and Underwriter's requests for a separate trial on the issue of coverage.

At the trial on the issue of coverage, the defendant Boeschke stated that he did not mean to hit or hurt the plaintiff as he was taking haphazard aim. However, on cross-examination, Boeschke contradicted this testimony stating that although he had no intention of hitting the plaintiff in the eye, he had intended to strike Pachucki's body with the rubber band-propelled projectile. In his testimony, Boeschke stated "You do not have too much control" when shooting a greening pin; and admitted that the plaintiff could be hit in the eye because of the lack of control over the flying object's course of travel. Boeschke personally realized the danger of the flying object, testifying that on one occasion he had bled after being struck with a greening pin.

The defendant, Bernard Halas, testified that he was aiming in the plaintiff's general direction but was not trying to hit any particular part of his body. He explained that since a flying greening pin could strike anywhere on a person's body he realized there was a possibility that the pin could hit Pachucki in the face. The Defendants, as well as the plaintiff, stated that the "war" game was spontaneous and not the result of any provocation or animosity. During the 3-5 minute "game of war" the plaintiff and the defendants fired approximately 30 greening pins with only one other pin striking the plaintiff in the leg. It is undisputed in the record that the plaintiff returned the defendants' volleys and that

Boeschke was standing about 6 feet away when he fired the pin into the plaintiff's eye.

After trial, the court granted judgment in favor of the insurance companies and made the following pertinent findings of fact:

"21. That the shooting of greening pins is an activity ordinarily associated with non-business pursuits.

"22. That the defendants were shooting greening pins with the intent of hitting the plaintiff, although they had no intent to hit plaintiff in the eye and cause the specific injury which occurred.

"23. That it was a substantial certainty that the plaintiff would sustain some kind of damage.

"24. That from the standpoint of the actors, the shooting of the greening pins was an intentional act of the kind and character exempted from coverage pursuant to the exclusion contained in each of the three policies."

*Issue:*

Whether pursuant to the language contained in a homeowners insurance policy excluding coverage for bodily injury or property damage which is either expected or intended from the standpoint of the insured is coverage excluded only upon adequate proof that the insured specifically intended the resulting injury?

The appellant's preliminary contention is that the language of the intentional tort exclusion is ambiguous and must be construed in favor of coverage. *See: Mc-Phee v. American Mororists Ins. Co.,* 57 Wis.2d 669, 676, 205 N.W.2d 152 (1972). The insurers in this case concede that the intentional tort exclusion and the language used therein refers only to the denial of coverage for intentionally caused injuries, and does not refer to an intentional act of itself. We apply this court's interpretation recited in *Garriguenc v. Love,* 67 Wis.2d 130, 134–35, 226 N.W.2d 414 (1975) setting forth the reasonable

person standard for insurance contract construction and thus we do not find the policy language ambiguous as a reasonable person in the position of the insured would interpret the policy language as specifically applying only to injuries intentionally caused.

The appellant's principal argument is that the policy provision excluding coverage for ". . . bodily injury . . . which is either expected or intended from the standpoint of the insured" should be construed as requiring proof of a specific intent to cause injury. The appellant maintains that under this construction of the intentional tort exclusion, insurance coverage should be provided as it is virtually undisputed that none of the defendant co-employees intended to inflict injury to the plaintiff's eye.

To the contrary, the respondents support the trial court's analysis of the policy exclusion interpreting the provision to mean: where the insured intends to strike or hit a third party, the intent to injure may be inferred by the nature of the act as well as the reasonable foreseeability of the resulting harm, even though the actual injury is different in character or magnitude.

*Home Insurance v. Nielsen* (Ind. App. 1975), 332 N.E. 2d 240 outlines three general rules that have emerged with respect to the construction of an intentional tort exclusion:

(1) The minority view follows the classic tort doctrine of looking to the natural and probable consequences of the insured's act;

(2) The majority view is that the insured must have intended the act *and* to cause some kind of bodily injury;

(3) A third view is that the insured must have had the specific intent to cause the type of injury suffered.[3]

---

[3] *See*: *Annotation: Liability Insurance: Specific Exclusions of Liability Intentionally Caused by the Insured*, 2 ALR3d 1238 (1965).

The trial court denied coverage in the instant case with application of the majority view. The majority position is summarized in the following: (1) it is necessary that the insured intend both the act as well as intending to cause bodily injury in order for the exclusion to apply; (2) intent may be actual or may be inferred by the nature of the act and the accompanying reasonable foreseeability of harm; (3) once it is found that harm was intended, it is immaterial that the actual harm caused is of a different character or magnitude than that intended. *See: Butler v. Behaeghe,* 37 Colo. App. 282, 548 P.2d 934 (1976) ; *Clark v. Allstate Ins. Co.,* 22 Ariz. App. 601, 529 P.2d 1195 (1975).

To date, there is no Wisconsin case law that has squarely met the issue of determining the interpretation of ". . . bodily injury or property damage which is either expected or intended from the standpoint of the insured." In *Peterson v. Western Cas. & Surety Co.,* 5 Wis.2d 535, 93 N.W.2d 433 (1958) the court construed the phrase excluding coverage for ". . . injury . . . caused intentionally by . . . the insured" and affirmed the trial court's finding of coverage. Peterson was injured while standing next to the insured's open car door and was struck as the car moved away from its parked position. The court concluded that although the insured may have acted intentionally in an effort to escape from the police as he rapidly backed up his auto, his intentional acts were not directed toward the plaintiff. This court stated in regard to the trial court's finding that the insured's acts constituted gross negligence:

"The law may treat gross negligence as equivalent to intentional wrongdoing for some purposes, but not for the purpose of excluding liability for gross negligence from the coverage of a liability insurance policy." *supra* at 542.

Thus *Peterson* is interpreted as requiring proof of an intent to inflict harm in addition to an intentional act before coverage will be denied.

In *Falk v. Whitewater*, 65 Wis.2d 83, 221 N.W.2d 915 (1974) the court again pointed out that an intentional act is a separate legal consideration and must be distinguished from the intent to cause injury. In *Falk*, the defendants contended that a cause of action in negligence had not been stated as the plaintiff alleged the defendant intentionally made a fist and negligently struck him in the face. The defense argued "because the making of a fist in and of itself is an intentional act, . . . any further act resulting therefrom is likewise intentionally done." In rejecting this argument, the court stated:

"Even assuming that the making of a fist is necessarily an intentional act, to reason that the striking of someone with that fist is therefore necessarily likewise intentional is a *non sequitur*. Almost all negligent conduct is composed of individual intentional components; to constitute an intentional tort, however, the actor must intend the consequences of his acts, or believe that they are substantially certain to follow. Restatement, 1 *Torts* 2d, p. 15, sec. 8A. While a driver may intentionally step on the accelerator and intentionally steer his car into the passing lane, a resulting collision with an oncoming car is not ipso facto intentional on the driver's part.

"Similarly, it is noted in 65 C.J.S., *Negligence*, p. 451, sec. 2 (7) :

" 'The difference between intent and negligence, in a legal sense, ordinarily is nothing but the difference in the probability, under the circumstances known to the actor and according to common experience, that a certain consequence or class of consequences will follow from a certain act . . .' " *Id.* at 86–87.

The language in *Falk* defining intentional conduct as contrasted to negligent behavior is similar to the criteria

set forth in Prosser, *Law of Torts*, 4th ed. (1971) and cited by the trial court. Professor Prosser, in defining the meaning of intent, stated:

"The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way that the law will not sanction. The defendant may be liable although he has meant nothing more than a good-natured practical joke, . . .
". . .
"Intent, however, is broader than a desire to bring about physical results. It must extend not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does . . . The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it. The practical application of this principle has meant that where a reasonable man in the defendant's position would believe that a particular result was substantially certain to follow, he will be dealt with by the jury, or even by the court, as though he had intended it . . . ." *Id.* at 31–32.

Thus, we note that in each case of this type, the intent to inflict injury is a question of fact, *Peterson v. Western Cas. Ins. Co., supra* at 341–43, and therefore the applicability of this decision is limited to the policy language and the facts presently before us. As the intent to cause injury is a question of fact, the test to be applied to the trial court's determination relating to the question of intent is whether or not the finding of intent is contrary to the great and clear preponderance of the evidence. *Ehlers v. Colonia Penn. Ins. Co.,* 81 Wis.2d 64, 259 N.W.2d 718 (1977).

In the instant case, there is no dispute from the record that the defendants intentionally fired the green-

ing pins. Despite some statements to the contrary, each of the defendants admitted to attempting to hit the plaintiff but not in the eye, and they further testified it is almost impossible to obtain any degree of accuracy when shooting a greening pin. We note there is no direct evidence that the defendants were intending to inflict any harm other than to "sting" the plaintiff.

Upon this evidence, the trial court found that none of the defendants specifically intended to inflict injury to the plaintiff's eye. However, the trial court found the evidence supported the finding that the defendants fired the pins intending to hit the plaintiff's body and stated:

"I do not construe the expected or intended nature of the act provision as requiring a specific state of mind of intention on the part of the person who inflicts the injury to cause the specific bodily injury or specific property damage incurred.

"There was the intent to hit him. It was beyond the question of whether it is only a foreseeable risk that he would sustain damage, either of the kind that he sustained or some other damage, which a reasonable man would avoid, and becomes a substantial certainty that he would sustain damage."

The trial court's finding that the intent to inflict injury could be inferred from the nature of the defendants' intentional acts is not contrary to the great weight and clear preponderance of the evidence in the record. There was testimony supporting the fact that each of the defendants had prior knowledge that being struck with a greening pin will result in injury. Boeschke stated on one occasion after being hit by a greening pin he suffered an injury and bled.

In support of the trial court's finding, we examine *Clark v. Allstate Insurance Co., supra.* In that case, Clark struck another student in the face with his fist causing severe injuries. Allstate had issued a policy of

homeowners insurance to Clark's parents and had denied coverage, interpreting similar contract language as contained in this exclusionary clause. Clark maintained that he never intended to hurt the other student even though he did intend to hit him in the face with a "short jab." Concluding that the injuries herein were intentionally caused, the court stated:

". . . an act may be so certain to cause a particular harm that it can be said that a person who performed such an act intended the harm." *Id.* at 1196.

Some courts might characterize the defendants' conduct in this case as "horseplay" as there was no specific intent to do harm. However, the boys' actual knowledge based upon prior experience that a greening pin will cause harm when it strikes, especially when fired at the close range of six feet, distinguishes this appeal from the classic "horseplay" case of *Morrill v. Gallagher*, 370 Mich. 578, 122 N.W.2d 687 (1963). In *Morrill* the defendant Gallagher threw a cherry bomb into the plaintiff's office attempting to scare him but the result was a serious hearing impairment. The insurer, in its defense of the case, relied in part upon the intentional tort exclusion. The court rejected the defense position and stated:

"There is nothing in this case to justify the conclusion that (the insured) intended to cause any physical harm to the plaintiff." *Id.* at 691.

In *Morrill* the remote possibility of harm cannot be equated with the substantial certainty that harm would result under the facts of this case.

The present case is properly similar to *Butler v. Behaeghe, supra,* wherein the defendant's insurer refused to defend based on an identical exclusionary clause. The plaintiff and the insured got into an argument after an

altercation between their two teen-aged sons. The insured ordered the plaintiff off his property and when the plaintiff refused to leave, the insured procured a steel pipe. Although he intended to strike the plaintiff in the stomach, he hit the plaintiff on the head and an injury ensued. Finding that the insured's conduct fell within the exclusionary provision, the court concluded:

"Where coverage is excluded if bodily injury is 'intended or expected' by the insured, such exclusion is inapplicable if and only if the insured acts without any intent or any expectation of causing any injury, however slight. And conversely, such exclusion is inapplicable if the insured acts with the intent or expectation that bodily injury will result even though the bodily injury that does result is different either in character or magnitude from the injury that was intended." *Id.* at 938.

Thus, we hold the applicable case law supports the trial court's findings that the facts and circumstances of this case bar recovery pursuant to the language contained in the intentional tort exclusionary sections in the respective policies. We affirm the trial court's finding that the defendants' intent to inflict injury to the plaintiff can be inferred from the evidence and circumstances in this case.

*By the Court.*—Judgments affirmed.