**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 26, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2023AP861**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CV265

**IN COURT OF APPEALS
DISTRICT IV**

AMERICAN STRATEGIC INSURANCE CORPORATION,

    PLAINTIFF-APPELLANT,

  V.

DAVID CURRY AND LAPURISIMA CURRY,

    DEFENDANTS-RESPONDENTS,

ALEXANDER CURRY,

    DEFENDANT,

REBECCA HUTTON,

    INTERESTED PERSON-DEFENDANT,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY S.I.,

    INTERVENOR-DEFENDANT.

APPEAL from a judgment of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Affirmed.*

Before Kloppenburg, P.J., Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. American Strategic Insurance Corporation ("ASI") appeals a declaratory judgment in favor of David and Lapurisima Curry ("the Currys"). The Currys' adult son, Alexander Curry, was criminally charged with arson after starting a fire in the Currys' house that caused substantial damage to the house. In the criminal case, Alexander was adjudicated not guilty by reason of mental disease or defect, commonly referred to as NGI.[1] The Currys sought indemnification pursuant to their homeowners' insurance policy issued by ASI ("the policy") for the damage to their house caused by the fire. ASI denied coverage because of an exclusion in the policy for losses caused directly or indirectly by "illegal or criminal acts," and it subsequently brought this action for declaratory relief. The circuit court determined that Alexander did not commit "illegal or criminal acts" because the NGI adjudication negated his criminal intent and, therefore, the exclusion does not apply. Accordingly, the court concluded that the policy provides coverage for the Currys' claim and granted declaratory judgment for the Currys. We conclude that the "illegal or criminal acts" exclusion

---

[1] In Wisconsin, individuals can be found "not guilty by reason of mental disease or defect" of a criminal charge. *See* WIS. STAT. § 971.15 (2021-22). "This is known in common parlance as the 'insanity' defense" or "NGI," which stands for not guilty by reason of insanity. *State v. Burton*, 2013 WI 61, ¶42, 349 Wis. 2d 1, 832 N.W.2d 611. All subsequent references to the Wisconsin Statutes are to the 2021-22 version unless otherwise indicated.

does not apply because it is ambiguous and, therefore, must be construed in the Currys' favor.  Accordingly, we affirm.[2]

## BACKGROUND

¶2      There are no disputes as to the following material facts.

¶3      In 2021, the Currys' adult son, Alexander, started a fire in the Currys' house, where Alexander also lived, while suffering from an episode of schizophrenia.  Alexander later testified that he started the fire because he believed there were cameras and "imposters" in the house.  The Currys' house sustained substantial damage as a result of the fire.  The fire also caused damage to the house of the Currys' neighbor, Rebecca Hutton, whose claim against ASI is no longer at issue in this appeal.[3]

¶4      Alexander was criminally charged with arson with respect to the Currys' house.  A psychiatrist examined Alexander and diagnosed him with schizophrenia.  The psychiatrist opined that, "as the result of mental disease, Alexander Curry lacked substantial capacity to appreciate the wrongfulness of his actions and conform his conduct to the requirements of the law at the time of his alleged criminal actions."

---

[2]  "On appeal, we may affirm on different grounds than those relied on by the trial court," and we do so here.  *See* *State v. Earl*, 2009 WI App 99, ¶18 n.8, 320 Wis. 2d 639, 770 N.W.2d 755 (citations omitted).

[3] The circuit court also granted declaratory judgment in favor of American Family Mutual Insurance Company, S.I., Hutton's insurer and an intervenor-defendant-respondent in this appeal.  American Family informed this court during the pendency of this appeal that it had settled all claims with ASI and would not be submitting further briefing regarding the coverage for Hutton's claim.  We therefore do not address Hutton or American Family again in this opinion.

¶5    Alexander pleaded guilty to the arson charge and asserted an affirmative defense of not guilty by reason of mental disease or defect, or NGI. The State stipulated to Alexander's NGI plea. Because the full record of this criminal action was not provided in this appeal, we infer that the circuit court in the criminal case accepted the parties' NGI stipulation, found Alexander NGI, and entered a judgment of NGI. The court ordered that Alexander be committed to the custody of the Wisconsin Department of Health Services for a period of seven years.

¶6    Shortly after the fire, the Currys filed a claim with ASI to indemnify them for the damage to their house caused by the fire. After several months of investigation, ASI denied the Currys' claim because "exclusions apply to the loss and there is no coverage for the damage to the home."

¶7    ASI commenced this action for declaratory relief against the Currys. As relevant to this appeal, ASI sought a declaration that the policy does not provide coverage for the fire damage to the Currys' house because the policy contains an exclusion for "illegal or criminal acts" performed by any insured.[4] In ASI's view, Alexander committed an "illegal or criminal" act because he pleaded guilty to the arson charge in connection with the fire in the Currys' house. The Currys brought a counterclaim against ASI alleging that ASI breached its contract with them by failing to indemnify them for the fire damage to their house.

¶8    ASI moved for summary judgment, arguing that the Currys are not entitled to coverage as a matter of law because the policy unambiguously excludes

---

[4] The parties do not dispute that David Curry, Lapurisima Curry, and Alexander Curry are each an "insured" under the policy.

coverage for a loss caused by "illegal or criminal acts."[5] The Currys argued that they are entitled to a declaration of coverage under the policy, in part, because the "illegal or criminal acts" exclusion is ambiguous and should be construed in favor of coverage.

¶9 In an oral decision, the circuit court granted summary judgment in favor of the Currys pursuant to WIS. STAT. § 802.08(6), which allows a circuit court to grant summary judgment if a party opposing a motion for summary judgment is so entitled, even if that party has not moved for summary judgment. In granting summary judgment, the court explained that an NGI adjudication with respect to Alexander's arson charge meant that he did not commit a "criminal" act because he lacked the necessary intent to be convicted of arson. The court concluded that, because a reasonable insured would construe the terms "illegal" and "criminal" synonymously, the "illegal" acts exclusion is inapplicable. The court entered a final judgment in favor of the Currys against ASI for $600,717.76. ASI appeals.[6]

---

[5] ASI also moved to amend the circuit court's scheduling order, which did not address dispositive motions, to allow for its filing of the summary judgment motion after the eight-month time limit set in WIS. STAT. § 802.08(1). The court granted this motion at the same hearing in which it granted summary judgment to the Currys.

[6] The circuit court additionally granted summary judgment for Alexander, declaring that the Currys' insurance policy "provides coverage … for any claims of Alexander Curry against ASI." The court subsequently entered judgment in favor of Alexander for costs and statutory attorney fees in the amount of $691.35. It is unclear whether ASI means to appeal the judgment as to Alexander. In any event, ASI does not present a developed argument separately challenging the judgment in Alexander's favor. Accordingly, we do not separately address that judgment. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to address arguments that are undeveloped).

**DISCUSSION**

¶10  On appeal, ASI renews its argument that the Currys' policy does not provide coverage for the damage to their house because of the "illegal or criminal acts" exclusion.  For the following reasons, we conclude that the "illegal or criminal acts" exclusion is ambiguous and must, therefore, be construed in favor of coverage.[7]

## I.  Standard of Review and Governing Principles

¶11  This appeal requires us to review whether the circuit court properly granted summary and declaratory judgments as to coverage in the Currys' favor. "Both declaratory judgments and summary judgments are proper procedural devices for resolving insurance disputes." *Wright v. Allstate Cas. Co.*, 2011 WI App 37, ¶11, 331 Wis. 2d 754, 797 N.W.2d 531.

¶12  We review a summary judgment determination independently, applying the same methodology as the circuit court. *Dostal v. Strand*, 2023 WI 6, ¶17, 405 Wis. 2d 572, 984 N.W.2d 382.  Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*  Here, the parties concede that the material facts are not disputed.

---

[7] ASI also argues that the circuit court erred in granting the Currys' motion to supplement the record with full versions of the partial deposition transcripts attached to ASI's summary judgment motion.  We need not reach this issue because our conclusion that the Currys' policy must be construed to provide coverage for the fire damage based on the ambiguity of the "illegal or criminal acts" exclusion is dispositive and does not rely on these materials.  *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

¶13    We review a grant or denial of declaratory judgment for an erroneous exercise of discretion. *Id.*, ¶18. However, when the circuit court's exercise of discretion turns on a question of law, we review the question independently of the circuit court. *Id.* "Where the circuit court's grant of declaratory judgment turns upon its interpretation of an insurance policy, a question of law is presented." *Id.*

¶14    Here, our review of the circuit court's summary and declaratory judgment decisions involves interpreting the policy. When interpreting an insurance policy, we must interpret the language to mean what a reasonable person in the position of the insured would have understood the words to mean. *Folkman v. Quamme*, 2003 WI 116, ¶17, 264 Wis. 2d 617, 665 N.W.2d 857. "Contracts of insurance should not be construed through the magnifying eye of a technical lawyer, but rather from the standpoint of what an ordinary [person] would believe the contract to mean." *Handal v. American Farmers Mut. Cas. Co.*, 79 Wis. 2d 67, 77, 255 N.W.2d 903 (1977).

¶15    If a word or phrase in an insurance policy is susceptible to more than one reasonable interpretation, it is ambiguous. *Folkman*, 264 Wis. 2d 617, ¶13. "If there is an ambiguous clause in an insurance policy, we will construe that clause in favor of the insured." *Id.*; *see also* *Day v. Allstate Indem. Co.*, 2011 WI 24, ¶28, 332 Wis. 2d 571, 798 N.W.2d 199 ("[B]ecause the insurer is in a position to write its insurance contracts with the exact language it chooses—so long as the language conforms to statutory and administrative law—ambiguity in that language is construed in favor of an insured seeking coverage."). Accordingly, "[e]xclusions are narrowly or strictly construed against the insurer if their effect is uncertain." *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶24, 268 Wis. 2d 16, 673 N.W.2d 65.

7

¶16    When interpreting an insurance policy, we begin by determining whether the policy provides an initial grant of coverage for the claim asserted. *Day*, 332 Wis. 2d 571, ¶26. "The insured bears the burden of showing an initial grant of coverage." *Id.* If the insured shows that the policy provides an initial grant of coverage, "the burden shifts to the insurer to show that an exclusion nevertheless precludes coverage." *Id.*

¶17    Here, ASI does not dispute that the policy provides an initial grant of coverage for the fire damage to the Currys' house. Instead, ASI's sole argument on appeal is that the "illegal or criminal acts" exclusion precludes coverage as a matter of law.

## II.  Illegal or Criminal Acts Exclusion

¶18    The "illegal or criminal acts" exclusion provides as follows:

> We do not insure for a loss caused directly or indirectly by any of the following[:] ….
>
> ….
>
> **Illegal or Criminal Acts**. Illegal or Criminal Acts means any illegal or criminal act performed by, at the direction of, or in conspiracy with any "insured"[] that results in loss to covered property. This exclusion applies regardless of whether the "insured" is charged with a crime.

The terms "criminal" and "illegal" are not defined in the insurance policy.

¶19    Here, in granting summary judgment in favor of coverage, the circuit court determined that a reasonable insured would construe a "criminal act" to be synonymous with an "illegal act." On appeal, ASI does not challenge this determination or otherwise argue that the word "illegal" has a different meaning than the word "criminal" in the exclusion clause. Indeed, ASI treats these terms as

8

synonymous in its briefing and focuses its argument solely on the definition of "criminal." We therefore assume without deciding that a reasonable insured would construe the "illegal" acts exclusion as synonymous with the "criminal" acts exclusion. Accordingly, like the circuit court, we limit our analysis to whether Alexander's conduct was a "criminal" act.

¶20 ASI argues that "criminal" acts for the purposes of the exclusion are acts that violate the criminal code. According to ASI, Alexander violated the criminal code because his guilty plea to arson establishes that he committed all of the criminal elements of arson.[8] The Currys respond that the definition of "criminal" acts for the purposes of the exclusion is ambiguous. According to the Currys, a reasonable person in their position could interpret "criminal" acts as not including conduct for which an insured was absolved of criminal responsibility

---

[8] In support of its argument, ASI improperly cites two unpublished, per curiam decisions from this court, *Estate of Dobry ex rel. Dobry v. Wilson Mutual Insurance Co.*, No. 2013AP580, unpublished slip op. (WI App Dec. 10, 2013), and *Sunday v. McMillan-Warner Mutual Insurance Co.*, No. 2020AP941, unpublished slip op. (WI App June 15, 2021). Although this error was referenced in the response brief, ASI attempts to justify its error in its reply brief. ASI incorrectly asserts that it may cite these decisions because WIS. STAT. RULE 809.23(3)(b) allows a party to cite as persuasive authority "an unpublished opinion issued on or after July 1, 2009, that is authored by a member of a three-judge panel." This assertion is incorrect because RULE 809.23(3)(b) explicitly provides that a "per curiam opinion … is not an authored opinion for purposes of this subsection." RULE 809.23(3)(b). Hence, a per curiam opinion "may not be cited in any court of this state as precedent or authority," except in certain circumstances that do not apply here. RULE 809.23(3)(a). We will not consider these cases in this opinion, and we admonish ASI for citing these cases.

when adjudicated NGI. For the following reasons, we conclude that the exclusion is ambiguous and, therefore, must be construed in favor of coverage.[9]

## A. NGI Pleas

¶21 In Wisconsin, a defendant is "not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his or her conduct to the requirements of law." WIS. STAT. § 971.15(1). Accordingly, a defendant charged with a criminal offense may plead "[n]ot guilty by reason of mental disease or defect," or NGI, pursuant to WIS. STAT. § 971.06(1)(d), which is an affirmative defense to a criminal charge. Sec. 971.15(3). If a defendant pleads not guilty to the underlying offense and also enters an NGI plea, the court must hold bifurcated proceedings with two phases: the "guilt phase" and the "responsibility phase." *State v. Fugere*, 2019 WI 33, ¶26, 386 Wis. 2d 76, 924 N.W.2d 469. "Only if a defendant is found guilty in the first phase does the court withhold entry of judgment of guilt and the trial proceeds to the responsibility phase." *Id.* (citing WIS. STAT. § 971.165(1)(d)).

¶22 If the defendant enters a plea of "guilty" to the underlying crime and an NGI plea, as was the case here, the defendant "admits that but for the lack of mental capacity, the defendant committed all the essential elements of the offense

---

[9] As noted above, the circuit court determined that the "criminal" acts exclusion does not apply because the finding of NGI negated the element of intent and thereby rendered Alexander's conduct not "criminal." We do not address this determination because we affirm the circuit court on different grounds. *See Earl*, 320 Wis. 2d 639, ¶18 n.8 ("On appeal, we may affirm on different grounds than those relied on by the trial court. Furthermore, when we affirm on other grounds, we need not discuss our disagreement with the trial court's chosen grounds of reliance." (citations omitted)).

charged." ***Id.***, ¶27 (quoting WIS. STAT. § 971.06(1)(d)). In this situation, the defendant is "found guilty of the elements of the crime(s) and the responsibility phase is left for trial." ***Id.***

¶23 "The responsibility phase 'is not a criminal proceeding,' but 'is something close to a civil trial.'" ***Id.***, ¶26 (citation omitted). Our supreme court has characterized this phase as "a special proceeding in the dispositional phase of a criminal proceeding—a proceeding that is not criminal in its attributes or purposes." ***State v. Lagrone***, 2016 WI 26, ¶34, 368 Wis. 2d 1, 878 N.W.2d 636; *see also* ***State v. Koput***, 142 Wis. 2d 370, 395, 418 N.W.2d 804 (1988) ("[I]t is demonstrably evident that the responsibility phase is not a part of a 'criminal' trial.").

¶24 An NGI finding "is not the equivalent of a conviction." ***Bank of Sturgeon Bay v. DHSS***, 98 Wis. 2d 261, 273, 296 N.W.2d 736 (1980). Rather, a determination that a defendant is not guilty by reason of mental disease or defect is "an acquittal by reason of insanity." ***State v. Randall***, 192 Wis. 2d 800, 833, 532 N.W.2d 94 (1995). "[A] court finding of legal insanity is … a finding that under the applicable standard or test, the defendant is to be excused from criminal responsibility for his acts." ***Steele v. State***, 97 Wis. 2d 72, 91, 294 N.W.2d 2 (1980).

¶25 If a defendant is adjudicated NGI, the defendant is not subject to imprisonment. Instead, as pertinent to the facts of this case, the "court shall commit the person to the department of health services for a specified period not exceeding the maximum term of confinement in prison that could be imposed on an offender convicted of the same felony." WIS. STAT. § 971.17(1)(b). "[A]n NGI commitment is not punishment, but rather a collateral consequence to one who

successfully mounts an NGI defense to criminal charges." *Fugere*, 386 Wis. 2d 76, ¶2. In other words, a defendant who is found NGI is "civilly committed rather than criminally sentenced or sanctioned." *Id.*, ¶29.

## B. The Exclusion for Criminal Acts is Ambiguous

¶26 The determination of whether an act is "criminal" is objective, as understood by a reasonable person in the position of the insured. *See Folkman*, 264 Wis. 2d 617, ¶17. Because the word "criminal" is not defined in the policy, we may look to the definitions of that word in non-legal dictionaries. *Preisler v. General Cas. Ins. Co.*, 2014 WI 135, ¶40, 360 Wis. 2d 129, 857 N.W.2d 136 ("When determining the ordinary meaning of words not defined in an insurance policy, it is appropriate to look to the definitions in a non-legal dictionary."). Dictionaries define the word "criminal" as "relating to, involving, or being a crime." *See, e.g.*, *Criminal*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/criminal (last visited Sept. 12, 2024). Because the meaning of the word "criminal" depends on the meaning of the word "crime," we must determine the ordinary meaning of the word "crime." Our search of non-legal dictionaries reveals that the word "crime" can be defined in more than one way.

¶27 On the one hand, "crime" can be defined broadly as any conduct that is illegal or violates the law. *See, e.g.*, *Crime*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/crime (last visited Sept. 12, 2024) ("[A]n action or activity that is against the law, or illegal activity generally."); *Crime*, COLLINS DICTIONARY, https://www.collinsdictionary.com/us/dictionary/english/crime (last visited Sept. 12, 2024) ("[A]n act committed in violation of a law prohibiting it, or omitted in violation of a law ordering it."). In this case,

Alexander pleaded guilty to arson. In the context of his NGI plea, his guilty plea is an admission that he "committed all the essential elements" of arson. *See* WIS. STAT. § 971.06(1)(d). Hence, under one reasonable interpretation of the exclusion, Alexander committed a "criminal act" because he violated the law.

¶28 On the other hand, "crime" can also be defined as conduct that is subject to criminal punishment or responsibility. *See, e.g.*, *Crime*, The AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, https://www. ahdictionary.com/word/search.html?q=crime (last visited Sept. 12, 2024) ("An act committed in violation of law where the consequence of conviction by a court is punishment, especially where the punishment is a serious one such as imprisonment."); *Crime*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/crime (last visited Sept. 12, 2024) ("[A]n illegal act for which someone can be punished by the government."). This definition is consistent with the definition of "crime" in Wisconsin's criminal code. WIS. STAT. § 939.12 ("A crime is conduct which is prohibited by state law and punishable by fine or imprisonment or both.").

¶29 Under this meaning of the word "crime," a reasonable person in the Currys' position could interpret an NGI adjudication as not constituting a "crime" because Alexander was not punished, *i.e.*, not fined or imprisoned. As explained above, when Alexander pleaded NGI, the proceedings were bifurcated into a "guilt phase" and a "responsibility phase." During the "responsibility phase"—a proceeding that has been described as "not criminal in its attributes or purposes," *Lagrone*, 368 Wis. 2d 1, ¶34—the State stipulated to Alexander's NGI plea, and we infer that the circuit court found and adjudicated him "not guilty" by reason of mental disease or defect. This adjudication absolved him of criminal responsibility for the underlying offense of arson and resulted in the equivalent of

an acquittal of the arson charge. *See Steele*, 97 Wis. 2d at 91; ***Randall***, 192 Wis. 2d at 833. Moreover, the result of the court's NGI adjudication was not imprisonment or a fine, but a commitment to the custody of the Wisconsin Department of Health Services. Our supreme court has explained that "NGI commitments have historically been regarded as non-punitive in nature" and do not result in a criminal sentence or sanction. *See **Fugere***, 386 Wis. 2d 76, ¶¶29, 42. For these reasons, a reasonable person in the Currys' position could conclude that Alexander's conduct for which he was found NGI did not constitute a "criminal" act. *See **Swift v. Fitchburg Mut. Ins. Co.***, 700 N.E.2d 288, 295 (Mass. App. Ct. 1998) ("[A]n at least equally plausible meaning [of 'criminal acts'] … is that a person who is not convicted, or convictable, of a crime has not committed a criminal act, or that a person who is incapable of rational thinking or action at the time has not committed a criminal act.").

¶30 Because the definition of "criminal" in the exclusion clause is susceptible to more than one reasonable meaning, that word is ambiguous. *See **Folkman***, 264 Wis. 2d 617, ¶13. ASI could have resolved this ambiguity when it drafted the Currys' policy because it was in a position to "write its insurance contracts with the exact language it chooses." *See **Day***, 332 Wis. 2d 571, ¶28.[10]

---

[10] Insurers have the ability to resolve such ambiguity in a criminal act exclusion. For instance, in ***Cary v. Allstate Insurance Co.***, 922 P.2d 1335, 1337 (Wash. 1996), the Washington Supreme Court held that a "criminal act" exclusion applied where the insured was found "not guilty by reason of insanity" because the exclusion included the following language:

> We do not cover bodily injury or property damage resulting from:
>
> ….

(continued)

But because ASI failed to resolve this ambiguity, we construe the "illegal or criminal acts" exclusion in favor of coverage. *See id.*, ¶29. Accordingly, we conclude that the "criminal acts" exclusion in the Currys' insurance policy does not apply to conduct for which an insured has been found NGI and, therefore, does not preclude coverage for the damage to the Currys' house.

¶31    ASI argues that the definition of "criminal" is not ambiguous because the second sentence of the exclusion clause provides that the exclusion "applies regardless of whether the 'insured' is charged with a crime." We disagree. This sentence in the exclusion clause clarifies that the exclusion applies regardless of whether a particular act results in criminal proceedings being initiated by the government. However, this sentence does not fully clarify whether an act is "criminal" in nature. As discussed above, a "criminal" act could reasonably be interpreted by an insured as meaning conduct that merely violates the law or conduct that is subject to punishment or criminal responsibility. This particular ambiguity in the common definition of "criminal" would still exist even if the insured was never charged with a crime. Accordingly, the second clause of the exclusion does not save the exclusion from ambiguity.

¶32    ASI also relies on the following language from this court's decision in *Gillund v. Meridian Mutual Insurance Co.*, 2010 WI App 4, 323 Wis. 2d 1, 778 N.W.2d 662: "it is the *act of violating* the criminal law that the plain language of the policies exclude, not the *result* of the violation, namely the conviction."

---

An act or omission which is criminal in nature and committed by an insured person who lacked the mental capacity to appreciate the criminal nature or wrongfulness of the act or omission or to conform his or her conduct to the requirements of the law or to form the necessary intent under the law.

*Gillund*, 323 Wis. 2d 1, ¶24. ASI suggests that we should follow *Gillund* and conclude that the "criminal" acts exclusion only requires a violation of criminal law. This argument fails because *Gillund* is not interpreting an exclusion in an insurance policy for damage caused by "criminal" acts. Instead, *Gillund* is interpreting an exclusion for "[i]njury caused by a violation of a penal law or ordinance." *Id.*, ¶23. Whereas the exclusion in *Gillund* provided that a "violation" of a penal law was sufficient to trigger the exclusion, the Currys' insurance policy does not clarify whether the "criminal" acts exclusion requires a violation of the law or conduct that is subject to criminal punishment or responsibility. Hence, *Gillund* does not resolve the ambiguity in the Currys' policy.

¶33 Finally, ASI relies on the following language from this court's decision in *Wright*: "Although [the insured] was not subject to criminal penalties because of his mental illness, the nature of his acts does not change." *Wright*, 331 Wis. 2d 754, ¶15. According to ASI, this language establishes that Alexander's NGI adjudication does not affect the criminal nature of his underlying conduct. We disagree. Our decision in *Wright* involved an exclusion for damage or injury "intended by … any insured person." *Id.*, ¶13. This court determined that an insured's act is still intentional in nature for the purposes of this exclusion even if the insured is adjudicated NGI. *Id.*, ¶15. This conclusion in *Wright* has no bearing in the present case because we are asked to determine whether Alexander's acts were "criminal," not "intentional." Further, the exclusion at issue in *Wright* contained a clause that expressly excluded from coverage losses caused by any insured person who "lacks the mental capacity to govern his or her conduct." *Id.* ¶13. Accordingly, the policy at issue in *Wright* is distinct from the

policy at issue here, and that case does not resolve the ambiguity in the Currys' policy.[11]

¶34 In sum, we conclude that ASI has not met its burden of showing that the "illegal or criminal acts" exclusion applies here. Because ASI does not contend that any other exclusion precludes coverage under the policy, we conclude that the circuit court properly declared that the policy provides coverage for damage to the Currys' house caused by the fire.

## CONCLUSION

¶35 For the foregoing reasons, we affirm the judgment of the circuit court.

*By the Court.—*Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[11] We also note that *Wright* explicitly declined to address whether the insured's conduct in that case was "criminal." *Wright v. Allstate Cas. Co.*, 2011 WI App 37, ¶17, 331 Wis. 2d 754, 797 N.W.2d 531.