Wendy M. DAY, individually and as Personal
Representative of the deceased, Emma Day,
Plaintiff-Respondent-Petitioner,

v.

ALLSTATE INDEMNITY COMPANY,
Defendant-Third-Party Plaintiff-Appellant,

v.

Clinton DAY,
Third-Party Defendant.

Supreme Court

*No. 2008AP2929. Oral argument January 6, 2011.
—Decided April 29, 2011.*

2011 WI 24

(Also reported in 798 N.W.2d 199.)

572

574

575

For the plaintiff-respondent-petitioner the cause was argued by *Martha H. Heidt, Bye, Goff & Rohde, Ltd.*, River Falls, with whom on the brief was *C.M. Bye* and *Brian F. Laule*.

For the defendant-third-party-plaintiff-appellant the cause was argued by *John M. Swietlik, Jr., Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee with whom on the brief was *Michael D. Aiken* and *Michael J. Cerjak.*

¶ 1. ANN WALSH BRADLEY, J. Wendy M. Day seeks review of a published decision of the court of appeals reversing the circuit court's denial of Allstate Indemnity Company's motion for summary judgment.[1] The parties dispute whether Wendy's claim for wrongful death is covered under the terms of a homeowner's policy Allstate issued to Clinton and Holly Day. Allstate argues that the language of the family exclusion precludes coverage for Wendy's claim because a benefit of coverage would accrue directly or indirectly to an insured person.

¶ 2. The court of appeals concluded that Clinton, who is an insured person, would benefit from the coverage by virtue of his entitlement to half of any recovery Wendy received. It determined that the exclusion applied, and it directed the circuit court to grant summary judgment in favor of Allstate.

¶ 3. We determine that the court of appeals erred when it directed the circuit court to grant summary judgment in favor of Allstate. The court of appeals' assertion that Clinton would have a legal right to collect a portion of the wrongful death award fails to distinguish the right to pursue a claim under the wrongful death statute from the ownership of a wrongful death recovery when the parties are divorced.

¶ 4. Based upon an examination of the language of the policy, the canons of insurance policy construction, and our case law, we conclude that Allstate has failed to meet its burden to demonstrate that the family exclusion unambiguously precludes coverage. Therefore, we reverse the decision of the court of appeals

[1] *See Day v. Allstate*, 2010 WI App 72, 325 Wis. 2d 370, 784 N.W.2d 694, reversing a nonfinal order of the Circuit Court for St. Croix County, Edward F. Vlack III, Judge.

directing the entry of summary judgment and remand to the circuit court for further proceedings.

I

¶ 5. This insurance coverage dispute arises out of several claims advanced in the wake of the events of November 27, 2006. On that evening, eight-year-old Emma Day drowned while taking a bath at the home of her father, Clinton Day, and her stepmother, Holly Day.

¶ 6. The plaintiff in this action is Emma's mother and Clinton's former wife, Wendy Day. Wendy and Clinton divorced in 2004. They shared joint custody and placement of Emma prior to her death. Emma and her two sisters, Hannah Day and Desirae Sarver, were scheduled to spend the night of November 27 at Clinton and Holly's home.

¶ 7. According to the allegations in the complaint, Emma had epilepsy and suffered from frequent seizures. On the day of her death, she had two seizures and was excused early from school. Holly picked Emma up from school. Later that evening, Holly prepared a bath for Emma. The complaint alleges that Holly left Emma unattended in the bathtub with the bathroom door closed, and that Emma drowned as a result of having a seizure in the bathtub.

¶ 8. Wendy filed suit against Holly, alleging negligence. The complaint named Wendy as a plaintiff in three different capacities: "Individually"; "as Personal Representative of the Deceased"; and "on behalf of her Minor Children," Desirae and Hannah.

¶ 9. The complaint demanded the pecuniary loss and injury Wendy suffered as a result of Emma's death, an amount sufficient to compensate Wendy for the loss of her daughter's society and companionship, and relief

578

for "the wrongful death of Emma Day." On behalf of Emma, the deceased, it demanded the damages for Emma's pre-death pain and suffering. Finally, on behalf of Desirae and Hannah, the complaint demanded compensation for their severe emotional distress as well as an amount sufficient to compensate the girls for the loss of Emma's society and companionship.[2]

¶ 10. Holly tendered her defense to Allstate, which had issued a homeowner's policy listing Clinton and Holly as the named insureds.[3] The policy, which includes coverage for family liability, provides in relevant part: "Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy." It provides further: "If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are groundless, false or fraudulent."

¶ 11. The policy's grant of coverage is subject to various exclusions, including the following family exclusion: "We do not cover bodily injury to an insured person . . . whenever any benefit of this coverage would accrue directly or indirectly to an insured person."

---

[2] Wendy later amended her complaint and demanded additional damages, including medical expenses, funeral expenses, and burial expenses.

[3] During oral argument in this court, Allstate's attorney acknowledged that the policy's limit of liability was $300,000, which is $200,000 short of the damage cap for wrongful death. Wis. Stat. § 895.04(4).

All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

¶ 12. Allstate hired counsel to defend Holly, subject to its reservation of its right to deny coverage based on the family exclusion. The reservation of rights letter explained: "[t]he Allstate policy contains an exclusion that provides that the policy does not cover bodily injury to an insured person. Some or all of the damages claimed in the complaint relate to bodily injury sustained by an insured person. Allstate does not believe that Holly Day is entitled to coverage for such damages."

¶ 13. Allstate then moved to intervene as a party plaintiff "so that its obligation to provide insurance coverage to the defendant, Holly Day, relative to some or all of the claims set forth in the Complaint, can be determined." It also moved for an order bifurcating insurance coverage issues from the underlying issues of liability and damages. Finally, Allstate filed a cross-complaint seeking judgment declaring that Allstate has no duty to defend or indemnify Holly in connection with some or all of the claims set forth in the complaint.

¶ 14. The circuit court granted Allstate's motion to intervene. The court ordered bifurcation of the case so that the insurance coverage issues would be decided first, and stayed discovery on the merits pending final determination on coverage.

¶ 15. Allstate then filed a third-party complaint, requesting that Clinton Day be joined as an interested party. It later explained that "Clinton Day was joined by Allstate simply because, as one of Emma Day's parents, he owns a portion of the wrongful death cause of action brought by Wendy Day, and is therefore a necessary party in Allstate's declaratory judgment action. Clinton Day also paid for half of the funeral and related expenses, and would therefore own part of Emma's survivorship action."

¶ 16. Several months later, the parties filed a series of stipulations with the court. First, they stipulated to Holly's dismissal. Wendy expressed her intention to proceed exclusively against Allstate's liability policy.[4] The parties further stipulated to the dismissal of the claims made on behalf of Desirae and Hannah. Finally, Wendy represented and stipulated that she was pursuing no claim against Clinton in connection with the action.

¶ 17. Based on the parties' stipulations, the court dismissed Holly, and it also dismissed with prejudice the claims of Desirae and Hannah. In addition, the court ordered: "No claim shall be pursued against Clinton Day, now or in the future, in connection with this action." Finally, the court ordered that the complaint be amended to name Allstate as a defendant. As a result of the court order, the only remaining claims were the survival action[5] advanced on behalf of Emma's estate and Wendy's claim for wrongful death.

---

[4] Wisconsin's direct action statute, Wis. Stat. § 632.24, permits a plaintiff to bring suit directly against a tortfeasor's insurer without bringing suit against the tortfeasor:

> Any bond or policy of insurance covering liability to others for negligence makes the insurer liable, up to the amounts stated in the bond or policy, to the persons entitled to recover against the insured for the death of any person or for injury to persons or property, irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured.

[5] The parties and the court of appeals refer to this action as a "survivorship action." Wisconsin case law and practice guides more frequently refer to this type of claim as a "survival action." *See, e.g., Estate of Merrill v. Jerrick*, 231 Wis. 2d 546, ¶ 5, 605 N.W.2d 645 (Ct. App. 1999); 9 Callaghan's *Wisconsin Pleading & Practice* § 82:2 (4th ed. 2005); 2 *The Law of Damages in Wisconsin* § 16.10 (5th ed. 2010). For the sake of clarity and consistency, we use the term "survival action" throughout this opinion.

¶ 18. Allstate moved for summary judgment. With regard to the survival claim, it argued that "[t]he Allstate policy provides no coverage for the claims brought by Wendy Day as Emma Day's personal representative because they are based on Emma's bodily injury, the recovery for which would directly benefit the estate of the insured, Emma Day." It argued further that because there was no coverage for the survival claim, there was likewise no coverage for the wrongful death claim. In response to Allstate's brief, Wendy filed a cross motion for summary judgment.

¶ 19. After hearing arguments, the circuit court issued a written decision. Addressing the survival claim, the circuit court assumed for the sake of argument that Emma was an insured under Clinton and Holly's policy. Nevertheless, it concluded that there was coverage under the policy for a claim brought by Emma's personal representative that would benefit her estate: "While bodily injury in the policy includes death, the direct or indirect benefit must accrue to an 'insured person.' [The policy] does not say to an insured person or their estate." The court construed ambiguity against the insurer and concluded that "the phrase 'insured person' does not include an insured person's estate."

¶ 20. Addressing Wendy's wrongful death claim, the court found that "Wendy Day is clearly not an insured under Clinton Day's insurance policy with Allstate." It explained that it was required to interpret the phrase "accrue directly or indirectly to an insured person." Relying on this court's discussion of that phrase in *Whirlpool Corp. v. Ziebert*, 197 Wis. 2d 144, 152, 539 N.W.2d 883 (1995), the circuit court determined: "This court cannot, as a matter of law, find that any moneys that Wendy Day *may* receive would 'be funneled through' directly or indirectly" to Hannah or Desirae. (Emphasis

in original.) The court concluded that coverage existed under the policy, and it granted Wendy's motion for summary judgment.

¶ 21. The court of appeals granted Allstate's petition for leave to appeal the non-final order, and it reversed the circuit court. It began by acknowledging that "resolution of this coverage dispute requires that we determine to whom the benefits of Wendy's wrongful death and [survival] claims would accrue." *Day v. Allstate*, 2010 WI App 72, ¶ 9, 325 Wis. 2d 370, 784 N.W.2d 694. The court reasoned that both claims were excluded from coverage because Clinton, an insured, was entitled to half of any recovery on either claim. *Id.*, ¶ 16.

¶ 22. Regarding the survival claim, the court reasoned that Clinton and Wendy would share equally any assets belonging to Emma's estate under the laws governing intestate succession. *Id.*, ¶ 13. Consequently, it determined, "one-half of any [survival] damages Wendy recovers will pass through Emma's estate to Clinton. If Allstate must indemnify Holly for these losses, Clinton—an insured person—would benefit from the coverage." *Id.*

¶ 23. The court of appeals also determined that there was no coverage for Wendy's wrongful death claim. Citing *Bruflat v. Prudential Prop. & Cas. Ins. Co.*, 2000 WI App 69, ¶ 18, 233 Wis. 2d 523, 608 N.W.2d 371, the court of appeals asserted that "any amount recovered shall belong and be paid to Clinton and Wendy." *Day*, 325 Wis. 2d 370, ¶ 11. Therefore, it concluded that Clinton would benefit from coverage because he would have a "legal right to collect a portion of the wrongful death award." *Id.*

¶ 24. Wendy filed a petition with this court seeking review of the court of appeals' determination that there is no coverage for her wrongful death claim. She

did not seek review of the court of appeals' determination regarding the survival claim, and accordingly, that issue is not before this court.

II

¶ 25. In this case, we are required to construe the terms of an insurance policy to determine whether Allstate may deny coverage for Wendy's wrongful death claim. An insurance policy is a contract for insurance. Construction of an insurance policy is a question of law, which we review independently of the determinations rendered by the circuit court and the court of appeals. *Folkman v. Quamme*, 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857.

¶ 6. When determining whether an insurance policy provides coverage, we examine the facts of the claim and the language of the policy to determine whether the policy's insuring agreement makes an initial grant of coverage. *Estate of Sustache v. Am. Family Mut. Ins. Co.*, 2008 WI 87, ¶ 22, 311 Wis. 2d 548, 751 N.W.2d 845. If the claim triggers the initial grant of coverage, we determine next whether any of the various exclusions preclude coverage for the claim. *Id.*, ¶ 23. The insured bears the burden of showing an initial grant of coverage, and if that burden is met the burden shifts to the insurer to show that an exclusion nevertheless precludes coverage. *Am. Family Mut. Ins. Co. v. Schmitz*, 2010 WI App 157, ¶ 8, 330 Wis. 2d 263, 793 N.W.2d 111.

¶ 27. The court's goal is to determine and carry out the intentions of the parties as expressed by the language of the insurance policy. *Folkman*, 264 Wis. 2d

617, ¶ 12. An insurance policy is to be construed, whenever possible, "so as to give a reasonable meaning to each provision of the contract, and [] courts must avoid a construction which renders portions of a contract meaningless, inexplicable or mere surplusage." *1325 North Van Buren, LLC v. T-3 Group, Ltd.*, 2006 WI 94, ¶ 56, 293 Wis. 2d 410, 716 N.W.2d 822.

¶ 28. We interpret policy terms not in isolation, but rather in the context of the policy as a whole. *Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, ¶ 61, 255 Wis. 2d 61, 647 N.W.2d 223. We give undefined words and phrases their common and ordinary meaning. *Folkman*, 264 Wis. 2d 617, ¶ 17. If words or phrases are susceptible to more than one reasonable construction, they are ambiguous. *Id.*, ¶ 13. "[B]ecause the insurer is in a position to write its insurance contracts with the exact language it chooses—so long as the language conforms to statutory and administrative law—ambiguity in that language is construed in favor of an insured seeking coverage." *Froedtert Mem'l Lutheran Hosp. v. Nat'l States Ins.*, 2009 WI 33, ¶ 43, 317 Wis. 2d 54, 765 N.W.2d 251.

¶ 29. A basic canon of construction in Wisconsin is that exclusions in an insurance policy are narrowly construed against the insurer. *Whirlpool*, 197 Wis. 2d at 152. A court will enforce exclusions that are clear from the face of the policy. *Id.* However, if the effect of an exclusion is ambiguous or uncertain, it will be construed in favor of coverage. *Id.*

### III

¶ 30. Because the parties focus many of their arguments on public policy, we begin our discussion by

briefly clarifying the role that public policy plays in a discussion about insurance coverage. Next, we turn to examining the policy language to determine whether the family exclusion in this policy of insurance unambiguously precludes coverage.

■

¶ 31. If an insurance policy provision is contrary to clear public policy, a court may conclude that it is unenforceable.[6] On several occasions, this court has addressed public policy arguments regarding the enforceability of family exclusions. In both *Shannon v. Shannon* and in *Whirlpool*, it was argued that the family member exclusion, which excluded coverage under the facts of each case, was "contrary to public policy." *Shannon v. Shannon*, 150 Wis. 2d 434, 455, 442 N.W.2d 25 (1989); *Whirlpool*, 197 Wis. 2d at 147.

¶ 32. In those cases, we concluded that the exclusions were not contrary to public policy because they serve the legitimate purpose of "exempt[ing] the insurer from liability to those persons to whom the insured, on account of close family ties, would be apt to be partial in case of injury." *Shannon*, 150 Wis. 2d at 456. We further determined that an insurer need not prove actual collusion between the plaintiff and the insured as a prerequisite to enforcing a family exclusion: "[S]uch clauses are not contrary to public policy, even though

---

[6] *See, e.g., Mau v. North Dakota Ins. Reserve Fund*, 2001 WI 134, ¶ 34, 248 Wis. 2d 1031, 637 N.W.2d 45 (concluding that an occupancy requirement in an underinsured motorist policy was unenforceable because it excluded coverage for a named insured in violation of Wis. Stat. § 632.32(6)(b)2.a. (1995–96)). Courts will determine that a policy provision is contrary to public policy only in cases that are free from doubt. *Continental Ins. Co. v. Daily Express, Inc.*, 68 Wis. 2d 581, 589, 229 N.W.2d 617 (1975).

there may be no collusion in this particular case." *Whirlpool*, 197 Wis. 2d at 151–52.

¶ 33. Seizing upon our discussion in *Shannon* and *Whirlpool*, the parties focus many of their arguments on notions of public policy and the purpose underlying family exclusions. Wendy argues that there is little likelihood of collusion here given the probable antagonism between Clinton's former and current wives. The amicus brief filed by the Wisconsin Association for Justice takes the public policy discussion one step further. It argues that even if concerns about collusion would support denying coverage, there may be other public policies that should be considered, including the public policy against denying coverage in cases involving domestic abuse. Allstate contends that these facts present a likelihood of collusion, and accordingly, it implies that it is appropriate to deny coverage.

¶ 34. By advancing these arguments, the parties put the cart in front of the horse. Generally, family exclusions are enforceable because they protect the insurer from a class of plaintiffs to whom the insured defendant may be partial—but it does not follow that the family exclusion protects an insurer from all plaintiffs to whom the defendant insured may be partial.[7]

¶ 35. Whether the family exclusion precludes coverage for Wendy's wrongful death claim is a question of contract interpretation. The purpose underlying a family exclusion does not control our determination of

---

[7] *See Whirlpool Corp. v. Ziebert*, 197 Wis. 2d 144, 148, 539 N.W.2d 883 (1995) (recognizing that whether a claim is excluded under "the specific language of the family exclusion clause" is a separate question from whether such exclusions are "contrary to public policy").

587

whether the language of the family exclusion unambiguously precludes coverage for a claim. The answer to that question depends upon the language of the insurance policy.

## IV

¶ 36. We turn next to interpreting the relevant policy language. It is clear that Wendy's claim for wrongful death falls within the policy's initial grant of coverage. The policy provides that, "[s]ubject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury . . . arising from an occurrence to which this policy applies, and is covered by this part of the policy." If Wendy prevails, Holly, who is an insured, will be legally obligated to pay damages because of Emma's bodily injury.

¶ 37. The question, then, is whether the language of the family exclusion unambiguously precludes coverage for the claim. The family exclusion provides: "We do not cover bodily injury to an insured person . . . whenever any benefit of this coverage would accrue directly or indirectly to an insured person."

¶ 38. In this context, the word "whenever" serves the role of a conjunction and indicates that two conditions must be met for the exclusion to apply. The exclusion's language precludes coverage if: (1) the coverage sought is for bodily injury to an insured person; and (2) any benefit of coverage would accrue directly or indirectly to an insured person.[8]

---

[8] At some points throughout its argument, Allstate appears to abandon any language-based interpretation of the policy. Instead, it briefly suggests that because there is no coverage for Emma's estate's claims, there is likewise no coverage for

¶ 39. Like the circuit court and the court of appeals, we focus our examination on whether "any benefit" of coverage "would accrue directly or indirectly to an insured person."[9] The parties agree that Clinton, Holly, Hannah, and Desirae are all insureds.[10]

¶ 40. We are mindful that the only claim now being pursued, and therefore the only claim we need address in this opinion, is Wendy's wrongful death claim. It is undisputed that Wendy is not an insured under Allstate's policy. Nevertheless, we agree with Allstate that "[t]he fact that Wendy Day is not an insured person under the policy will not save her wrongful death claim against Allstate if a benefit would accrue to an insured person[.]"

Wendy's wrongful death claim: "If there is no coverage for Emma Day's bodily injury under Allstate's policy, it follows there can be no coverage for Wendy Day's wrongful death claim, which is dependent on and stems from that bodily injury."

This argument is inconsistent with the language of the policy. The language of the exclusion precludes coverage when (1) the coverage sought is for bodily injury to an insured person and (2) any benefit of coverage would accrue directly or indirectly to an insured person. Allstate's argument that the sole consideration should be whether there is injury to an insured fails to account for the second condition, that is, whether any benefit would accrue to an insured.

[9] There is no dispute that Emma is an insured person, and that Wendy's wrongful death claim arises out of Emma's bodily injury. The parties do not brief or argue whether claims that arise out of bodily injury to an insured fit within the exclusion's first condition. Accordingly, we do not determine whether the first condition is met, and like the parties, we focus our examination on the exclusion's second condition.

[10] Emma was likewise an insured under the policy. Under the circumstances here, we need not determine whether her estate would be considered an "insured." The court of appeals determined that there is no coverage for the estate's survival claim, and Wendy does not seek review of that determination.

The language of the policy requires us to determine whether a benefit of coverage would accrue directly or indirectly to an insured person.

¶ 41. We examine first what is meant by the term "benefit," as it is used in the family exclusion. Next, we turn to examining whether any benefit of coverage would accrue directly or indirectly to any insured.

## A

¶ 42. Although the meaning of the exclusion turns on a definition of the term "benefit," the policy does not define that term. We are left, then, to attempt to discern its meaning. Our inquiry about the meaning of "benefit" is aided by this court's examination of the identical family member exclusion in *Whirlpool*, 197 Wis. 2d 144.

¶ 43. The relevant facts from the *Whirlpool* case are important but not complex. Three-year-old Jaclyn Ziebert was injured by a meat grinder that had been manufactured by Whirlpool. *Id.* at 147. Jaclyn's parents filed suit against Whirlpool and another defendant, seeking damages for Jaclyn's injuries. *Id.* at 147–48. In a separate action, Whirlpool filed a contribution claim against Jaclyn's mother. *Id.* at 148. It alleged that Jaclyn's mother's negligent supervision contributed to Jaclyn's injuries. *Id.* Jaclyn's mother tendered the defense of Whirlpool's contribution claim to her homeowner's insurer, which contested coverage. Jaclyn's action for negligence against Whirlpool was stayed pending resolution of the coverage dispute in the contribution claim.[11]

---

[11] *Whirlpool*, 197 Wis. 2d 144, Appendix of Petitioner at 111, available at the Wisconsin Law Library.

¶ 44. To understand the reasoning adopted by the *Whirlpool* court, it is essential to understand the nature of a contribution claim. A contribution claim may arise when more than one tortfeasor is legally responsible for an injury. If one of the tortfeasors has paid more than its proportionate share of the damages, it may seek contribution from the other tortfeasors. "Contribution distributes the loss by requiring each person to pay his proportionate share of the damages on a comparative fault basis." *Swanigan v. State Farm Ins. Co.*, 99 Wis. 2d 179, 196, 299 N.W.2d 234 (1980).

¶ 45. By bringing the contribution action against Jaclyn's mother, Whirlpool was alleging that Jaclyn's mother, an insured, was obligated to pay her proportionate share of the damages Whirlpool owed to Jaclyn, also an insured, for her bodily injury. *See Whirlpool*, 197 Wis. 2d at 155 ("The liability being asserted in Whirlpool's contribution claim against [Jaclyn's mother] is based on the claim for damages suffered by Jaclyn Ziebert. That liability is identical whether there is a direct claim against [Jaclyn's mother] by her daughter or whether the claim is indirectly asserted through a contribution claim by Whirlpool.").

¶ 46. The language of the family exclusion in *Whirlpool* was identical to the language in this policy, and we had occasion to explore the circumstances under which a "benefit" would accrue to an insured. This court determined that the language "is unambiguous and clearly contemplates contribution claims." *Id.* at 153. It explained that a benefit would accrue indirectly to Jaclyn because "the *money* Whirlpool receives [as a result of the contribution claim] will, in all practical respects, be funneled through to Jaclyn," who was injured and also an insured under the policy. *Id.* at

153–54 (emphasis added). The court commented: "To say that Jaclyn Ziebert is not receiving a benefit because her *recovery* comes from a contribution claim rather than a direct claim for personal injuries is the ultimate tribute to form over substance. Such a conclusion defies both logic and common sense." *Id.* at 155 (emphasis added).

¶ 47. In *Whirlpool*, the court applied the term "benefit" to reference money recovery, that is, the proceeds of insurance coverage. It concluded that when the insurance proceeds end up in the pocket of the insured, a benefit has accrued to the insured, regardless of whether those proceeds are paid directly by the insurer or funneled indirectly through a third party: "An indirect benefit would incur to Jaclyn if Whirlpool won its contribution claim since the money Whirlpool receives will, in all practical respects, be funneled through to Jaclyn. Jaclyn would receive, in the plainest sense of the word, an indirect benefit." *Id.* at 153–54. The court continued: "The direct/indirect benefit language was obviously meant to differentiate between two possible types of benefits and to clarify the policy language to ensure that contribution claims were included in the scope of the clause."[12] *Id.* at 154.

---

[12] Like the exclusion at issue in this case, the key phrase in the *Whirlpool* exclusion was "whenever any benefit of this coverage would accrue directly or indirectly to an insured person." The plain language of the exclusion does not set forth two different types of benefits. Rather, it sets forth two different ways in which benefits may accrue to an insured.

We recognize that at times, the *Whirlpool* court used the shorthand "direct and indirect benefits" when discussing the language of the exclusion. Nevertheless, the "benefits" contemplated by the court—whether direct or indirect—were the proceeds of the insurance policy. The distinction made by the court

¶ 48. Allstate argues for a more expansive interpretation of the term "benefit." Citing *Red Arrow Products Co., Inc. v. Employers Insurance of Wausau*, 2000 WI App 36, ¶ 17, 233 Wis. 2d 114, 607 N.W.2d 294, Allstate asserts that "the principal benefits provided under an insurance policy are indemnification and defense." It contends that "the family exclusion will apply if *any* benefit under the policy—including [not only] (1) the proceeds of coverage, [but also] (2) the right to indemnification under the policy, or (3) the right to a defense under the contract's obligation to defend the insured—would accrue to an insured person." (Emphasis in original.)

¶ 49. Because Holly would be benefited by her contractual right to receive defense and indemnification, Allstate argues that a "benefit of coverage" "would accrue directly or indirectly to [Holly,] an insured person." Therefore, Allstate concludes, the family exclusion applies.

¶ 50. Certainly, an insured is benefitted by receiving defense and indemnification from an insurer. However, Allstate's expansive interpretation of the undefined term "benefit" to include an insured's contractual right to defense and indemnification is inconsistent with how that term is used in the very next exclusion in the policy.

---

was the means by which this benefit would accrue to the insured rather than what constitutes a benefit. *See Whirlpool*, 197 Wis. 2d at 153 ("A 'direct' benefit [] would accrue to Jaclyn Ziebert by way of a direct claim against Sharon Ziebert and Allstate. . . . An indirect benefit would incur to Jaclyn if Whirlpool won its contribution claim since the money Whirlpool receives will, in all practical respects, be funneled through to Jaclyn.").

The dissent's reliance on "two types of benefits" misconstrues both *Whirlpool* and the language of the policy. *See* dissent, ¶ 99.

¶ 51. In addition to the family exclusion, the term "benefits" appears in the exclusion immediately following. That exclusion precludes coverage if the bodily injury occurred to a person eligible to receive certain benefits, including workers' compensation benefits:

> We do not cover bodily injury to any person eligible to receive benefits required to be provided or voluntarily provided by an insured person under any workers' compensation, non-occupational disability or occupational disease law.

¶ 52. Again, the policy does not define what is meant by the term "benefits." Nevertheless, we are unaware of any workers' compensation benefits that do not involve the payment of money. It appears that this exclusion is referring to money—that is, monetary benefits that are paid pursuant to a workers' compensation policy.[13] It does not make sense to suggest that the term "benefits" as used in this exclusion is a reference to the contractual right to receive a defense or the contractual right of indemnification.

¶ 53. Thus, Allstate's interpretation of the term "benefit" in the family exclusion is not consistent with the meaning of the term "benefits" used in the exclusion that appears immediately below it.[14] Allstate's expan-

---

[13] *See, e.g.*, total disability benefits (Wis. Stat. § 102.43(1)); partial disability benefits (Wis. Stat. § 102.43(2)); temporary disability benefits (Wis. Stat. § 102.43(5)); death benefit (Wis. Stat. § 102.46); compensation for burial expenses (Wis. Stat. § 102.50).

[14] The term "benefit" also appears in a section setting forth various conditions to the policy's coverage for accidental loss to dwellings, other structures, and personal property. One condition of this first-party coverage, titled "No Benefit to Bailee," provides: "This insurance will not benefit any person or organization who may be caring for or handling your property for a

594

sive interpretation of the term "benefit" would violate the canon of construction that policy terms should be interpreted not in isolation, but rather in the context of the policy as a whole. *Schmitz*, 255 Wis. 2d 61, ¶ 61; *see also Johnson Controls, Inc. v. London Market*, 2010 WI 52, ¶¶ 67–69, 325 Wis. 2d 176, 784 N.W.2d 579.

¶ 54. Additionally, interpreting the term "benefit" to include the contractual right to defense and indemnification in addition to the recovery of insurance proceeds would violate a second canon of construction. It would render an entire phrase in the family exclusion meaningless.

¶ 55. As discussed above, the language of the exclusion precludes coverage if two conditions are satisfied: (1) the coverage sought is for bodily injury to an insured person; and (2) any benefit of coverage would accrue directly or indirectly to an insured person. Yet, in every case where there is an initial grant of coverage under this policy, the right to defense and indemnification would always accrue to an insured. Accordingly, under Allstate's interpretation, the exclusion's second condition would always be satisfied. The language of Allstate's family exclusion would mean nothing different from an exclusion with the single condition: "We do not cover bodily injury to an insured person."

¶ 56. If Allstate had intended to exclude coverage in all cases where the coverage sought was for bodily injury to an insured person, it should have said so. An established canon of construction provides that language in an insurance policy will be construed "so as to give a reasonable meaning to each provision of the contract." *1325 North Van Buren*, 293 Wis. 2d 410, ¶ 56. Because it

---

fee." Again, the term is undefined and does not appear to unambiguously include an insured's contractual right to defense and indemnification.

would "render[] portions of a contract meaningless, inexplicable or mere surplusage," *id.*, it is not reasonable to interpret the word "benefit" in the family exclusion as a reference to defense and indemnification.[15]

¶ 57. We conclude that Allstate has failed to meet its burden to demonstrate that the policy term "benefit" unambiguously includes the contractual right to receive a defense or the contractual right to indemnification. The term is undefined in the policy. Allstate's expansive definition is inconsistent with Wisconsin case law interpreting identical policy language. It is likewise inconsistent with how the term is used in the context of another policy provision. Finally, it would render policy language meaningless surplusage.

## B

¶ 58. Having determined that Allstate has failed to demonstrate that the term "benefit" unambiguously

---

[15] We recognize that a recent decision of the New York appellate division, *Cragg v. Allstate Indem. Corp.*, 74 A.D.3d 90, 92 (N.Y. App. Div. 2010), adopted reasoning similar to the reasoning advanced by Allstate. The *Cragg* court did not discuss any defense that would be received by an insured, but it did consider the insured's contractual right to indemnification for a money judgment: "[I]ndemnification by Allstate on behalf of decedent's mother would result in the receipt by the mother, an insured, of the benefits of the policy in the form of the satisfaction of the money judgment obtained against her for the death of her daughter, also an insured."

We do not find the New York decision to be persuasive for several reasons. Most importantly, its interpretation of this language contravenes our canons of construction, as discussed above. Additionally, the New York Court of Appeals has granted leave to appeal the *Cragg* decision, leaving uncertain the status of this lower court decision relied on by Allstate. 15 N.Y.3d 705 (Sept. 2, 2010).

includes the right to a defense and the right to indemnification, we turn to examining whether any insurance proceeds will accrue directly or indirectly to an insured person as a result of Allstate's coverage of Wendy's claim. Allstate advances several arguments in support of its position.

¶ 59. Most formidably, Allstate contends that because half of the wrongful death claim belongs to Clinton, any insurance proceeds Wendy recovers for Emma's wrongful death "must be split between Wendy Day and Clinton Day." Similarly, the court of appeals concluded that Clinton "benefits from coverage by virtue of his legal right to collect a portion of the wrongful death award." *Day*, 325 Wis. 2d 370, ¶ 11. Citing *Bruflat*, 233 Wis. 2d 523, ¶ 18, the court of appeals asserted that any wrongful death recovery "shall belong and be paid" to both Clinton and Wendy.

¶ 60. We construe these arguments as an assertion that insurance proceeds would accrue directly to Clinton by virtue of Wendy's wrongful death recovery. To evaluate this assertion, it is necessary to review the nature of wrongful death actions under Wisconsin law.

¶ 61. Some causes of action survive the death of the person who is entitled to bring them. Wisconsin Stat. § 895.01 codifies this common law principle. A "survival action" is brought to recover damages suffered by the decedent prior to death. *Weiss v. Regent Properties, Ltd.*, 118 Wis. 2d 225, 233, 346 N.W.2d 766 (1984); *see also Schilling v. Chicago, N. Shore & Milwaukee R.R. Co.*, 245 Wis. 173, 177, 13 N.W.2d 594 (1944) (pre-death conscious pain and suffering). With a survival action, both the cause of action and the recovery belong to the estate.

¶ 62. An action for wrongful death is separate and distinct from a survival action. *Weiss*, 118 Wis. 2d at 233; *see also Truesdill v. Roach*, 11 Wis. 2d 492, 496–97, 105 N.W.2d 871 (1960). "It has been held many times that the wrongful-death statute creates a new cause of action, . . . and such cause of action is distinct from any cause of action that the deceased might have had if he had survived." *Id.* Importantly, wrongful death beneficiaries seek recovery not for the injury suffered by the deceased, but rather "for the loss sustained to the beneficiaries because of the death."[16] *Id.*

¶ 63. In contrast to a survival action, which belongs to the estate, "[t]he action for wrongful death does not belong to the estate of the deceased or become an asset thereof." *Nichols v. United States Fid. & Guar. Co.*, 13 Wis. 2d 491, 496, 109 N.W.2d 131 (1961); *Weiss*, 118 Wis. 2d at 230–31. Instead, the right to bring an action for wrongful death belongs to certain relatives of the decedent, who are designated by statute.

¶ 64. Wisconsin Stat. § 895.04(1) "provides that a wrongful death action may be brought by the person to whom the amount recovered belongs, and § 895.04(2) instructs that the person to whom it belongs is the

---

[16] A wrongful death action compensates the beneficiaries "for the pecuniary benefits which they would have derived from the earning power of the decedent had he or she lived" and "the loss of the relational interest existing between the beneficiaries and the decedent." *Weiss v. Regent Properties, Ltd.*, 118 Wis. 2d 225, 230, 346 N.W.2d 766 (1984). The loss of the deceased's society and companionship is an "element of damages recoverable in the cause of action for wrongful death." *Nichols v. United States Fid. & Guar. Co.*, 13 Wis. 2d 491, 497, 109 N.W.2d 131 (1961).

598

relative (or relatives) next in order under § 852.01."[17] *Lamers v. Am. Hardware Mut. Ins. Co.*, 2008 WI App 165, ¶ 15, 314 Wis. 2d 731, 761 N.W.2d 38. In this case, the right to bring an action for wrongful death belongs to the class of beneficiaries consisting of Emma's lineal heirs, Wendy and Clinton. Wisconsin Stat. § 895.04(3) requires that the claims of both Wendy and Clinton be consolidated for the action to proceed.[18]

¶ 65. Based on the fact that Wendy and Clinton are members of the same class of beneficiaries, Allstate argues that Clinton will benefit directly from coverage for Wendy's wrongful death claim. This argument relies on the assumption that because Clinton has a right to make a claim under the wrongful death statute and because his claim must be consolidated with Wendy's claim for wrongful death, Clinton will have an entitlement to a portion of any insurance proceeds Wendy recovers. Allstate's assumption is not supported by our case law.

¶ 66. This court has explained that "[t]he right to sue and recover damages under the wrongful death statute *must be distinguished from the ownership and*

---

[17] Wisconsin Stat. § 895.04(2) provides in part: "If there are no such surviving minor children, the amount recovered shall belong and be paid to the spouse or domestic partner of the deceased; if no spouse or domestic partner survives, to the deceased's lineal heirs as determined by s. 852.01; if no lineal heirs survive, to the deceased's brothers and sisters."

[18] Wisconsin Stat. § 895.04(3) provides: "If separate actions are brought for the same wrongful death, they shall be consolidated on motion of any party. Unless such consolidation is so effected that a single judgment may be entered protecting all defendants and so that satisfaction of such judgment shall extinguish all liability for the wrongful death, no action shall be permitted to proceed except that of the personal representative."

*allocation of the recovery itself." Chang v. State Farm Mut. Auto. Ins. Co.*, 182 Wis. 2d 549, 561, 514 N.W.2d 399 (1994) (emphasis added). Although all members of a class (here, both Wendy and Clinton) share the right to bring a wrongful death action, they do not necessarily share joint ownership of the recovery. Rather than requiring joint ownership or an equal division of any wrongful death recovery, each wrongful death beneficiary's recovery may be an individualized amount that is based on a beneficiary's actual loss. *Keithley v. Keithley*, 95 Wis. 2d 136, 289 N.W.2d 368 (Ct. App. 1980).

¶ 67. In *Keithley*, the divorced parents of a deceased minor accepted a settlement of their wrongful death claim, but they could not agree on a division of the proceeds. *Id.* at 137. The circuit court considered each parent's loss to be a question of fact, and it submitted the questions to the jury. The jury awarded the entire settlement to the mother. On appeal, the father argued that he was entitled to half of the wrongful death damages as a matter of law.

¶ 68. The *Keithley* court determined that "wrongful death damages do not become a part of the decedent's estate, to be divided simply on the basis of a biological relationship," and that the wrongful death statute does not require an equal division between parents. *Id.* at 138. It determined that the rules of intestate succession were irrelevant to the proportioning of wrongful death damages. Rather, "[w]rongful death damages are not automatically recoverable; the survivors must prove their loss." *Id.*

¶ 69. In *Chang*, the wrongful death beneficiaries were the married parents of a deceased child. The specific issue was whether the father's negligence, which

had contributed to the child's death, diminished the mother's ability to recover her own damages for the child's wrongful death.

¶ 70. Like the *Keithley* court, this court rejected the argument that "there must be an automatic, equal division of damages or recovery among the class members." *Chang*, 182 Wis. 2d at 562. It clarified that "[d]amages may be stipulated . . . or damages may be awarded jointly to a class of beneficiaries if so requested and agreed, but since recovery is for actual damages, every individual beneficiary has the right to prove and collect upon his or her individual loss[.]" *Id.* at 557.

¶ 71. We explained that under the statute, a wrongful death beneficiary's recovery is not affected by any other beneficiary's inability to recover damages:

> There are no provisions in the statute for reducing a non-negligent beneficiary's recovery. Nor are there any provisions for reducing the award of the class of beneficiaries because of the negligence of one of its members. Nor will we impute the negligence of the father to the mother in these circumstances.

*Id.* at 563–64.

██

¶ 72. As both *Keithley* and *Chang* made clear, the wrongful death statute does not provide that all members of a class always have a legal right to collect a portion of any wrongful death recovery. Rather, each beneficiary's recovery for wrongful death may be independent from the recovery of any other beneficiary. This premise is made more evident in situations where the wrongful death beneficiaries are divorced. Wisconsin's pattern jury instructions advise circuit courts that when "the parents are separated or di-

vorced, it may be advisable to submit separate questions for each parent." Wis. JI-Civil 1895 cmt.

¶ 73. Accordingly, any language from *Bruflat* suggesting that a wrongful death recovery must be distributed to all wrongful death beneficiaries is inconsistent with this court's pronouncement in *Chang*, and it is withdrawn.[19] *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case.").

¶ 74. Further, the court of appeals in this case erred by concluding that Clinton would have a "legal right to collect a portion of the wrongful death award." *Day*, 325 Wis. 2d 370, ¶ 11. The court of appeals' assertion fails to distinguish ownership of wrongful

---

[19] In addition to its inconsistency with *Keithley* and *Chang*, it appears that the *Bruflat* court's brief discussion of the wrongful death statute was based on an error of law. Specifically, the court of appeals failed to recognize the distinction between survival damages for the deceased's injuries (which belong to the deceased's estate) and wrongful death damages for the beneficiaries' own losses (which belong to the beneficiaries).

In that case, Simon Bruflat was killed in an automobile accident, and his estate filed a claim for uninsured motorist (UM) coverage. *Bruflat v. Prudential Prop. & Cas. Ins. Co.*, 2000 WI App 69, ¶¶ 2, 4, 233 Wis. 2d 523, 608 N.W.2d 371. Although the court of appeals characterized the UM proceeds as a "wrongful death award," *id.*, ¶ 1, this characterization was inconsistent with other portions of the court of appeals' opinion. For example, the court asserted that the recovery was for Simon's own injuries, not for his parents' losses. It further explained: "Prudential's UM coverage seeks to reimburse the victim. In the present case, Simon is the victim, not [his parents]." *Id.*, ¶ 20.

death recovery from the right to pursue a claim under the wrongful death statute. *See Chang*, 182 Wis. 2d at 561; *see also* Wis. JI-Civil 1895 cmt.

¶ 75. When examined in this light, it is apparent that under the facts of this case, no insurance proceeds will accrue to Clinton by virtue of Allstate's coverage of Wendy's wrongful death claim. Regardless of whether Wendy pursues a wrongful death claim and whether Allstate provides coverage, Clinton has a right to bring a claim for Emma's wrongful death. Yet, a judgment in favor of Wendy does not entitle Clinton to any ownership of her recovery. If he remains a party to this action, Clinton will have to prove his own loss. It goes almost without saying that if the fact-finder awards Clinton any damages, Allstate will have no contractual obligation to indemnify those losses under the family exclusion.[20]

---

[20] The dissent misconstrues this opinion when it contends that Clinton's decision not to actively pursue wrongful death damages is "the touchstone upon which the majority relies." *Dissent*, ¶ 105; *see also id.*, ¶ 108. Rather, the "touchstone" of our analysis is that Clinton and Wendy have separate recoveries under the wrongful death statute, and that Allstate can provide coverage for the wrongful death damages sought by Wendy without providing coverage for any wrongful death damages awarded to Clinton.

The dissent likewise misconstrues other aspects of this opinion. It asserts: "According to the majority, [the dismissal of the claims originally advanced by Hannah and Desirae] results in coverage for" Wendy's wrongful death claim. *Id.*, ¶ 102. Contrary to this assertion, we do not conclude that coverage for Wendy's claim is contingent upon the dismissal of her daughters' claims.

The dissent mistakenly assumes that the exclusion of coverage for any one claim advanced in a lawsuit will lead to the exclusion of coverage for all other claims advanced in the same lawsuit. The dissent's assumption is unsupported. Regardless of whether Clinton, Hannah, and Desirae pursue claims for which there is no coverage under the policy, the determination of

603

¶ 76. Allstate advances several additional arguments that benefit will accrue directly or indirectly to an insured. It contends that Wendy "would undoubtedly utilize at least some of the proceeds of this lawsuit to benefit her children," Hannah and Desirae, who are both insureds. It further asserts that "[a]ny money that Wendy Day[] recovers from Allstate will ease Clinton Day's financial burden of providing Hannah Day and Desirae Sarver with their desired material resources."

¶ 77. Under the facts here, no benefit would directly accrue to Hannah, Desirae, or Clinton. Neither Hannah and Desirae nor Clinton would have any entitlement to the insurance proceeds. The distribution of insurance proceeds to Wendy is not equivalent to the distribution of insurance proceeds to her daughters or to her former husband.

¶ 78. During oral argument, the attorney for Allstate explained his argument that a benefit would indirectly accrue to an insured as follows:

> I think first of all, to the extent that Clinton Day and Wendy Day have joint custody of the children and Wendy Day would obtain a financial recovery, I think that there is a potential benefit to the children. She has more money, she's got more money to spend on providing things like clothing and food and shelter and school supplies and things of that nature. I think that Clinton Day could even indirectly benefit insofar as perhaps his load for caring for these children could be decreased by virtue of the fact that she has a financial recovery in this case.

The attorneys and the court speculated that as a result of Wendy's recovery, Hannah and Desirae might be able to go on an extra vacation, ride in a new car, or supersize their meals.

---

whether there is coverage for Wendy's claim is made by comparing Wendy's claim against the language of the policy.

¶ 79. When pressed by members of the court, Allstate's attorney appeared to acknowledge that this argument was based not on the language of the exclusion, but rather upon the purpose underlying the exclusion and notions of public policy. He explained: "You have to go back to the public policy that underlies the family member exclusion." He further emphasized: "I would say [] that it is the public policy behind the exclusion, the potential for collusion." As discussed above, the purpose underlying an exclusion does not control our determination of whether the language of the family exclusion unambiguously precludes coverage for a claim. *See supra*, ¶ 35.

¶ 80. In evaluating whether a benefit would accrue indirectly to an insured, it is helpful to compare the alleged benefits that Allstate identifies with the benefit identified in *Whirlpool* that would accrue indirectly to Jaclyn Ziebert. In *Whirlpool*, the court found that a benefit would accrue indirectly to an insured because, due to the nature of a contribution claim, "in all practical respects, the money [recovered in the action] will be funneled through to" the insured under the policy. Unlike in *Whirlpool*, this case does not involve a contribution claim. In this case, there is no reason to suggest that any insurance proceeds that Wendy recovers would be in any way funneled through Wendy's accounts and on to an insured.[21] Allstate's assumptions about how Wendy would spend the insurance proceeds are based only on speculation.

---

[21] Allstate also argues that "the benefit to Clinton Day as a result of the survivorship claim triggers the application of the family exclusion to preclude coverage for Emma Day's bodily injuries." We do not understand Allstate's argument. Wendy's claim for wrongful death action is a separate cause of action from the estate's survival claim, and the estate's survival claim has been dismissed.

¶ 81. Further, stretching the policy term "benefit" to encompass the possibility that Wendy might buy her daughters supersized meals or take them on a vacation would appear have no stopping point. Rather, it seems that the same argument could be made any time that there was an injury to an insured person. As stated above, if Allstate had intended to exclude coverage in all cases where there was bodily injury to an insured person, it should have said so. *See supra,* ¶ 56.

¶ 82. We conclude that Allstate has failed to meet its burden to demonstrate that a benefit of coverage would accrue directly or indirectly to an insured. To the extent that the terms of the policy lack clarity, the ambiguity in an insurance contract is construed in favor of coverage.[22]

¶ 83. In sum, we determine that the court of appeals erred when it directed the circuit court to grant summary judgment in favor of Allstate. The court of appeals' assertion that Clinton would have a legal right to collect a portion of the wrongful death award fails to distinguish the right to pursue a claim under the wrongful death statute from the ownership of a wrongful death recovery when the parties are divorced.

¶ 84. Based upon an examination of the language of the policy, the canons of insurance policy construction, and our case law, we conclude that Allstate has failed to meet its burden to demonstrate that the family exclusion unambiguously precludes coverage. Therefore, we reverse the decision of the court of appeals directing the

[22] Having determined that the policy language does not unambiguously preclude coverage for Wendy's wrongful death claim, we need not address Wendy's argument that the exclusion is unenforceable under these facts.

entry of summary judgment and remand to the circuit court for further proceedings.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.

¶ 85. ANNETTE KINGSLAND ZIEGLER, J. (*dissenting.*) Today, in the face of undoubtedly sympathetic facts, the majority avoids a straight-forward application of the unambiguous family exclusion provision and dispenses with the precedent set forth in *Whirlpool Corp. v. Ziebert*, 197 Wis. 2d 144, 539 N.W.2d 883 (1995). In the process, the majority authors a recipe for collusion, inviting insureds to manipulate intra-family claims so as to obtain liability coverage where it otherwise would be excluded.

¶ 86. While I have tremendous sympathy for the Day family, this court cannot rewrite an unambiguous family exclusion provision in order to cover a risk that Allstate did not contemplate and for which it did not receive a premium. *See Estate of Sustache v. Am. Family Mut. Ins. Co.*, 2008 WI 87, ¶ 19, 311 Wis. 2d 548, 751 N.W.2d 845. Accordingly, I respectfully dissent.

## I. ANALYSIS

¶ 87. This court has expressly recognized the validity of family exclusion provisions in homeowner's insurance policies. *See Whirlpool*, 197 Wis. 2d at 149–50; *Shannon v. Shannon*, 150 Wis. 2d 434, 455–56, 442 N.W.2d 25 (1989). In particular, this court has concluded that family exclusion provisions serve the legitimate purpose of protecting insurers from exposure to liability to those persons to whom an insured, because of close family ties, would likely be partial in case of injury. *Whirlpool*, 197 Wis. 2d at 149; *Shannon*, 150 Wis. 2d at 456. In such cases, the mere possibility of family member

607

collusion warrants the exclusion of coverage. *Whirlpool*, 197 Wis. 2d at 150–52.

¶ 88. With that policy in mind, I turn to the case now before this court.

¶ 89. To determine whether Wendy Day's claim for wrongful death is covered by the homeowner's insurance policy issued to Holly Day, I begin with the language of the policy. The policy's initial grant of coverage provides, in relevant part, that "[s]ubject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury . . . arising from an occurrence to which this policy applies, and is covered by this part of the policy."

¶ 90. In turn, the policy defines "insured person(s)" as "you and, if a resident of your household: a) any relative; and b) any dependent person in your care." Clinton and Holly Day are named insureds under the policy. In addition, the parties do not dispute that Emma Day and the two surviving children of Clinton and Wendy Day (Hannah Day and Desirae Sarver) qualify as "insured persons."

¶ 91. The policy also defines "bodily injury." In relevant part, " '[b]odily injury'—means physical harm to the body, including sickness or disease, and resulting death . . . ." Again, the parties do not dispute that Emma Day's death constitutes "bodily injury" for purposes of this policy.

¶ 92. Accordingly, it is clear that Wendy Day's claim for Emma Day's wrongful death falls within the policy's initial grant of coverage: if Wendy Day prevails on her claim, then Holly Day, as a named insured, will be "legally obligated to pay because of [Emma Day's] bodily injury."

¶ 93. · However, that initial grant of coverage is subject to a family exclusion provision. The provision provides, in relevant part: "We do not cover bodily injury to an insured person . . . whenever any benefit of this coverage would accrue directly or indirectly to an insured person." In other words, in this case, "[Allstate] do[es] not cover bodily injury to [Emma Day] . . . whenever any benefit of this coverage would accrue directly or indirectly to [Clinton Day, Holly Day, Emma Day, Hannah Day, or Desirae Sarver]."

¶ 94. Significantly, in *Whirlpool*, this court concluded that the language of the identical family exclusion provision was clear and unambiguous. 197 Wis. 2d at 153, 155–56. Without explanation, the majority appears to arrive at the opposite conclusion of the *Whirlpool* court, namely, that the family exclusion provision is ambiguous. *See* majority op., ¶ 82 ("To the extent that the terms of the policy lack clarity, the ambiguity in an insurance contract is construed in favor of coverage."). Moreover, in *Whirlpool*, the clear and unambiguous family exclusion provision appeared in a homeowner's insurance policy issued by Allstate, the same insurer that issued Clinton and Holly Day's policy. *See id.* at 148. In the more than 15 years since *Whirlpool* has been decided, Allstate should have been able to rely on this court's conclusion that the identical family exclusion provision is clear and unambiguous. Instead, today, the majority concludes that "Allstate has failed to meet its burden to demonstrate that the family exclusion unambiguously precludes coverage." Majority op., ¶¶ 4, 84.

¶ 95. Because the *Whirlpool* court construed and applied the identical family exclusion provision, I look to the *Whirlpool* decision for guidance in applying the family exclusion provision to the facts now before us.

¶ 96. In *Whirlpool*, this court held that the identical family exclusion provision was "clear and unambigu-

609

ous and clearly encompasse[d]" a third party contribution claim brought against an insured. 197 Wis. 2d at 155–56. In that case, three-year-old Jaclyn Ziebert injured her hand in a meat grinder manufactured by Whirlpool Corporation (Whirlpool). *Id.* at 147. Jaclyn and her parents, Kenneth and Sharon Ziebert, filed an action against Whirlpool and the supplier of the meat grinder to recover damages for Jaclyn's injuries. *Id.* at 147–48. Whirlpool then filed a separate contribution claim against Sharon Ziebert and her homeowner's liability insurer, Allstate, alleging that Sharon's negligent supervision contributed to Jaclyn's injuries. *Id.* at 148.

¶ 97. Allstate moved for summary judgment in the contribution action, arguing that the family exclusion provision in Sharon Ziebert's homeowner's insurance policy excluded coverage for Whirlpool's contribution claim. *Id.* The circuit court denied Allstate's motion, but the court of appeals reversed. *Id.* This court affirmed the decision of the court of appeals, concluding that the family exclusion provision "even when construed narrowly, is unambiguous and clearly contemplates contribution claims." *Id.* at 153.

¶ 98. The *Whirlpool* court aptly noted that the key phrase of the family exclusion provision is " 'whenever any benefit of this coverage would accrue *directly* or *indirectly* to an insured person.' " *Id.* Explaining that a court should interpret an insurance contract to give meaning to each word, the court concluded that "[t]he direct/indirect benefit language was obviously meant to differentiate between *two possible types of benefits*": "direct" benefits and "indirect" benefits. *Id.* at 154 (emphasis added).[1]

---

[1] The majority acknowledges this language in *Whirlpool* but quickly dismisses it, explaining that the *Whirlpool* court did not

¶ 99. In direct contradiction to *Whirlpool*, the majority conflates the analysis, interpreting the term "benefit" to mean only one type of benefit: insurance proceeds. *See* majority op., ¶ 58 ("[W]e turn to examining whether any insurance proceeds will accrue directly or indirectly to an insured person as a result of Allstate's coverage of Wendy's claim."). Interpreting the term "benefit" to mean only insurance proceeds contradicts the clear language of the family exclusion provision, which provides that Allstate "do[es] not cover bodily injury to an insured person . . . whenever *any* benefit of this coverage would accrue directly or indirectly to an insured person." (Emphasis added.) A proper reading of *Whirlpool* reveals that insurance proceeds are construed as a "direct" benefit of coverage, which is just *the first of two types of benefits* included within the family exclusion provision. The second type of benefit, an "indirect" benefit, is not so narrow. I examine the two types of benefits in turn.

## A. "Direct" Benefits

¶ 100. First, the *Whirlpool* court construed "direct" benefit to mean the insurance proceeds that would accrue to an insured person by way of a direct claim against another insured person. Applying the ordinary dictionary meaning of "direct,"[2] the court determined that "[a] 'direct' benefit . . . would accrue to Jaclyn Ziebert by way of a 'direct' claim against Sharon Ziebert

---

mean what it said. Majority op., ¶ 47 n.12. If the majority is going to overrule *Whirlpool*, then it should simply say so.

[2] *See Acuity v. Bagadia*, 2008 WI 62, ¶ 22, 310 Wis. 2d 197, 750 N.W.2d 817 (explaining that when a term is not defined in an insurance policy, this court gives the term its common and ordinary meaning by consulting dictionary definitions). *But see* majority op., ¶¶ 42, 52–54 (recognizing that the policy does not

and Allstate." *Id.* at 153. Stated differently, if Jaclyn Ziebert would have brought a negligence claim against her mother, there is no question that the family exclusion provision would have barred coverage: assuming Jaclyn's claim prevailed, a "direct" benefit—that is, the insurance proceeds—would accrue to Jaclyn, an insured person. *See id.*

¶ 101. Likewise, in this case, if an insured person (Clinton Day, Emma Day, Hannah Day, or Desirae Sarver) brings a direct claim against Holly Day, there is no question that the family exclusion provision bars coverage: if the claim prevails, a "direct" benefit in the form of insurance proceeds would accrue to the insured person.

¶ 102. Hannah Day, Desirae Sarver, and Clinton Day have all, at some point in the litigation, asserted direct claims against Holly Day for Emma Day's death. For the reason just stated, those claims are clearly subject to the family exclusion provision. However, as this lawsuit has progressed, certain claims and parties have successively dropped out, leaving only Wendy Day's claim for wrongful death asserted directly against Allstate. According to the majority, this results in coverage for Emma Day's death—coverage that otherwise would clearly be excluded if claims were made by other members of the same family. Hence, the majority instructs a family how best to plead in order to obtain coverage and avoid application of an unambiguous family exclusion provision.

¶ 103. At one time, both Hannah Day and Desirae Sarver were named plaintiffs in the complaint against Holly Day. Majority op., ¶¶ 8–9. However, the parties

define the term "benefit" but nevertheless neglecting to consider the term's common and ordinary meaning).

later stipulated to the dismissal of Hannah Day and Desirae Sarver's claims. *Id.*, ¶ 16. Indeed, if their claims had remained and prevailed, then the family exclusion provision clearly would have precluded coverage.

¶ 104. Clinton Day was not a named plaintiff in the complaint; as a practical matter, Clinton probably did not wish to assert a claim against his wife. Nevertheless, as the majority acknowledges, Wendy Day's claim for wrongful death could not proceed without Clinton Day bringing a claim for wrongful death. *See* Wis. Stat. § 895.04(3); majority op., ¶ 64. Hence, Wendy Day's claim for wrongful death was able to proceed only by virtue of Clinton Day asserting a claim for wrongful death against his wife—a claim that is clearly subject to the family exclusion provision.

¶ 105. The majority sidesteps any significant analysis regarding Clinton Day's claim and instead concludes that his right to sue and recover damages for his daughter's wrongful death does not mean that he is entitled to a portion of Wendy Day's recovery. *See* majority op., ¶¶ 65, 75. Relying on *Chang v. State Farm Mutual Automobile Insurance Co.*, 182 Wis. 2d 549, 514 N.W.2d 399 (1994), the majority reasons that although Clinton Day and Wendy Day are members of the same class of beneficiaries and thus "share the right to bring a wrongful death action, they do not necessarily share joint ownership of the recovery"; rather, each beneficiary's recovery is independent, and each beneficiary must prove his or her own loss. Majority op., ¶ 66. According to the parties, in this case, Clinton Day is not actively pursuing his portion of the recovery for his daughter's wrongful death. Apparently, this is the touchstone upon which the majority relies.

¶ 106. Contrary to the majority's suggestion, however, *Chang* is not so limited. While the *Chang* court concluded that the wrongful death statute does not "dictate[e] an *automatic*, equal division of damage awards or recovery among class members," 182 Wis. 2d at 562 (emphasis added), the court also made clear that the fact-finder is not precluded from presuming equal damages "if no individualized findings of damages are requested or given for the members of a class," *id.* at 562.[3] *See also id.* at 573–74 ("[I]f there are no specific

---

[3] The holding in *Chang* cannot be divorced from its context. In that case, only one of two parents brought a wrongful death claim for the loss of the couple's child. *Chang v. State Farm Mut. Auto. Ins. Co.*, 182 Wis. 2d 549, 558, 514 N.W.2d 399 (1994). The other parent's recovery was barred by virtue of the undisputed fact that his negligence was the sole cause of the child's death. *Id.* at 563. The court concluded that the wrongful death statute does not "dictat[e] an automatic, equal division of damage awards or recovery" among the members of the class of beneficiaries, *id.* at 562, which meant that the non-negligent parent's recovery was not automatically cut in half. Rather, as the sole claimant, she had the right to prove and collect upon her individual loss up to the statutory maximum. *Id.* at 557; *see also Smith v. State Farm Fire & Cas. Co.*, 192 Wis. 2d 322, 335–36, 531 N.W.2d 376 (Ct. App. 1995).

In *Chang*, there was only one wrongful death claimant and hence no need to allocate the recovery. Nevertheless, the court went on to discuss the method of allocating damages among two or more wrongful death claimants. *See Chang*, 182 Wis. 2d at 581–82 (Steinmetz, J., concurring) (criticizing the majority for needlessly addressing the issue of the allocation of damages when, in that case, only one party claimed damages). The court concluded:

> [I]f there are no specific damage findings for individual members of the class, or if the damages are awarded jointly to a given class, damages may be presumed to be equal. Each beneficiary would thus receive an equal proportion of the amount available, up to the statutory maximum. . . .

damage findings for individual members of the class, or if the damages are awarded jointly to a given class, damages may be presumed to be equal."). Accordingly, *Chang* suggests that, here, even if Clinton Day elects not to personally participate in the litigation and prove his own loss for his daughter's wrongful death, nothing would preclude the fact-finder from presuming that his damages are equal to Wendy Day's damages. If such is the case, Clinton Day's claim for wrongful death would prevail, and a "direct" benefit in the form of insurance proceeds would accrue to Clinton Day, an insured person.

¶ 107. More to the point, however, once Clinton Day joined the lawsuit, he had every incentive not to pursue his own interests in a recovery for his daughter's wrongful death. As previously mentioned, Wendy Day's claim for wrongful death was able to proceed only by virtue of Clinton Day asserting a claim for wrongful death—a claim originally asserted against Holly Day, Clinton's wife. Subsequent to Clinton Day joining the suit, however, Wendy Day "expressed her intention to proceed exclusively against Allstate's liability policy," and Holly Day was dismissed from the lawsuit. Majority op., ¶ 16. Because Holly Day was dismissed from the lawsuit, Clinton Day was able to avoid asserting a claim against his wife personally and was able to avoid placing their marital property at risk in the lawsuit. *See* Wis. Stat. § 766.31(1)-(3) (providing that all spousal property is, or

---

[In contrast,] [w]hen there is a specific finding of different damages for the individual members of the class, the members of the class should recover in proportion to the damages each has proven.

*Id.* at 573–74.

This latter discussion in *Chang* is what most pertains to the case at bar. Here, unlike in *Chang*, there are two wrongful death claimants: Wendy Day and Clinton Day.

615

is presumed to be, marital property and that, generally, each spouse has a present undivided one-half interest in the marital property); Wis. Stat. § 766.55(2)(cm) (providing that "[a]n obligation incurred by a spouse during marriage, resulting from a tort committed by the spouse during marriage, may be satisfied . . . from that spouse's interest in marital property").

¶ 108. Tracing the majority's logic, if the pleadings are manipulated such that only Wendy Day remains a legal party, then coverage inures to Wendy Day even though (a) Clinton Day is clearly necessary to the litigation; (b) Clinton Day's claim is clearly excluded; and (c) Clinton Day's own assets are at stake if insurance coverage does not apply. According to the majority, even though Clinton Day is a party, so long as he promises not to seek money damages, coverage for Wendy Day's claim is not precluded.

¶ 109. It is this potential for intra-family collusion that strikes at the heart of the family exclusion provision. In no way do I mean to suggest that the Days have intentionally manipulated their claims so as to ensure coverage for Emma Day's death. To the contrary, I have every reason to believe that the Days are upstanding people who have suffered a terrible family tragedy. However, it is the mere potential for intra-family collusion that warrants the exclusion of coverage for an insured's bodily injury. This is the precise rationale underlying *Whirlpool*, precedent that we are required to follow. *See Whirlpool*, 197 Wis. 2d at 151 ("It must be noted that our decision does not imply any wrongdoing on the part of the Zieberts. In fact, the possibility of collusion in this case seems quite low, if not nil. However, although this court never ignores the circumstances of a particular case, there are times when we must look beyond the immediate facts to principles of public policy and the broader ramifications

that our decisions have on the people of this state as a whole." (Internal footnote omitted.)).

## B. "Indirect" Benefits

¶ 110. After construing "direct" benefit to mean the insurance proceeds that would accrue to an insured person by way of a direct claim against another insured person, the *Whirlpool* court turned to "indirect" benefits. Applying the ordinary dictionary meaning of "indirect," the court construed "indirect" benefit to include the money that would incur to an insured person by virtue of a third party's successful claim against another insured person. *Id.* at 153–54. Specifically, the court concluded that "[a]n indirect benefit would incur to Jaclyn if Whirlpool won its contribution claim since the money Whirlpool receives will, in all practical respects, be funneled through to Jaclyn. Jaclyn would receive, in the plainest sense of the word, an indirect benefit." *Id.* In other words, the court concluded that if (a) Whirlpool's claim against Sharon Ziebert and Allstate prevailed, meaning Whirlpool recovered the insurance proceeds paid by Allstate for Sharon Ziebert's negligence, then (b) Jaclyn would receive an indirect benefit by virtue of Whirlpool having more money to meet Jaclyn's judgment. Indeed, assuming Whirlpool lacked the financial resources to meet Jaclyn's judgment, Whirlpool's contribution claim against Sharon Ziebert and Allstate would be Jaclyn's only source of funds. *Id.* at 150. Thus, as far as the *Whirlpool* court was concerned, Whirlpool's contribution claim against Sharon Ziebert and Allstate could have had the same practical effect as Jaclyn asserting a direct claim against her mother and Allstate.

¶ 111. Applying that same logic to the case now before this court, I conclude that an "indirect" benefit

would accrue to Hannah Day and Desirae Sarver by virtue of Wendy Day's successful claim against Allstate. That is, Wendy Day's claim against Allstate could have the same practical effect as her daughters asserting direct claims against Allstate—direct claims that, as discussed previously, would clearly be subject to the family exclusion provision. If Wendy Day prevails on her claim for wrongful death, then the money she receives "will, in all practical respects, be funneled through" to her daughters.[4] *Id.* at 153–54. To be fair, I cannot know for certain whether Wendy Day will spend the actual monies recovered in this lawsuit on her daughters. *See* majority op., ¶ 80. However, it was pure speculation on which the *Whirlpool* court based its conclusion that Jaclyn would incur an indirect benefit if Whirlpool prevailed on its contribution claim. 197 Wis. 2d at 153–54. The court never could have known whether Whirlpool was going to utilize the actual monies recovered in its contribution claim to help satisfy Jaclyn's judgment against Whirlpool. In fact, the court assumed for the sake of argument that, but for Whirlpool's successful contribution claim, Whirlpool lacked the financial resources to meet Jaclyn's judgment. *Id.* at 150. The logic of *Whirlpool* must apply here. We can assume that Hannah Day and Desirae Sarver would receive an indirect benefit by virtue of their mother

---

[4] Instead of meaningfully addressing Allstate's argument that an indirect benefit would accrue to Hannah Day and Desirae Sarver by virtue of their mother's successful claim against Allstate, *see* majority op., ¶ 78, the majority engages in the classic straw man fallacy—setting up and attacking an exaggerated version of Allstate's argument, *see id.*, ¶ 81 ("[S]tretching the policy term 'benefit' to encompass the possibility that Wendy might buy her daughters supersized meals or take them on a vacation would appear [to] have no stopping point.").

having more money, regardless of the actual manner in which she allocates her recovery.

¶ 112. In summary, I conclude that this case is governed by a straight-forward application of the unambiguous family exclusion provision. Specifically, I conclude that the family exclusion provision unambiguously precludes coverage for Emma Day's death because a benefit of coverage would accrue directly or indirectly to one or more insured persons, namely, Clinton Day, Hannah Day, and Desirae Sarver. Accordingly, I respectfully dissent.

¶ 113. I am authorized to state that Justices DAVID. T. PROSSER and MICHAEL J. GABLEMAN join this dissent.